Staples, J.
This is an appeal from a decree of the Circuit court of Eoekbridge county, in a suit instituted by the executor of Alexander Barclay, deceased, against the administrator and heirs of Hugh Wilson, deceased. It appears that upon the dissolution of-the firm of Ma *539 thews, Paxton & Co., in the year 1843, of which plaintiff’s testator and defendants’ intestate were members, two bonds amounting in the aggregate to $1,038.56, with interest thereon from their respective dates, were assigned to plaintiff’s testator, as a part of the capital stock invested by him in said partnership. These bonds , f . . . P were never collected, as is claimed, m consequence ox the insolvency of the obligor; and this suit was brought to recover the share or proportion for which the estate of Hugh Wilson is responsible.
I do not deem it necessary to consider the question so elaborately discussed at the bar, of the effect of the statute of limitation upon the plaintiff’s right of recovery. In my view of the case, the want of due diligence, on the part of Barclay, in enforcing the trust deeds given to secure the debts assigned to him, and the long delay of his representative before instituting this suit, are sufficient of themselves, to defeat this claim.
The bonds in question were assigned to Barclay in March 1843. He retained them in his possession until the year 1848, and then, for the first time, placed them in the hands of an attorney for collection, along with other papers relating to the concern of Mathews, Paxton & Co. The attorney states, he found it necessary to institute a suit in chancery in consequence of the various encumbrances upon the property of Deem, the obligor in the bonds. This is no doubt a mistake; as at that time the suit of Erskine & Caperton was pending. That suit was brought in 1848 ; the object was to enforce the liens of various judgments against the real estate of Deem.. Although Barclay was made a party to this suit in the beginning, it does not appear that he ever answered the bill, or manifested the slightest interest in. the conduct of the cause. At the October term 1843, a decree was rendered for the sale of part of Deem’s real estate. This decree was, however, never executed ; nor was any other step taken in the case, until the year 1849. *540 At the October term in that year, another decree was rendered for the sale of all the real estate belonging to ' Deem ; and directing proceeds of sale to be applied—■ first, to the judgments in favor of Erskiue & Caperton ; second, to the North judgments; and third, to the debt due to Barclay. The sale was made in 1850; and confirmed in the year 1851. It will thus be seen that the suit was permitted to remain seven years on the docket, without the slighest attempt on the part of Barclay to enforce the sale, either under the trust deeds, or the decrees of the court.
In the meantime, it is highly probable, the lands were deteriorating in value, while the interest was accumulating upon the debts having priority over those secured by the trust deeds. These deeds embraced several tracts of lands, upon one of which was a hotel with its appurtenances, and also a large quantity of personal property of considerable value. There were also two other tracts not included in the deeds, but subject to the lien of the judgments. It does not appear what became of the personal property. It was probably consumed by the family, or sold and applied in discharge of other debts.
Although the Chancery court had taken jurisdiction over the real estate of Deem, there was nothing to prevent a sale of the personal effects under the trust deeds. These deeds were executed in July 1842, and the debts assigned in March following. By the exercise of the least diligence in enforcing a sale of the personal property, there cannot be a question but that Barclay would have realized the greater part, if not the whole amount, of his claim.
This is the aspect of the case as presented by the record brought here at the suggestion of the court, and filed in ■the cause with the consent of counsel. In as much, however, as that consent was given before the record was seen, and as the counsel for the appellee seems to apprehend that some injustice may thereby be done his *541 client, it is proper to consider the case very briefly without reference to the facts disclosed by that record.
After this long delay, it must be conceded that the laboring oar is upon the plaintiff. It is incumbent upon him to establish clearly all the facts necessary to fix the liability of the defendants. It was his duty—not that of the defendants—to show the quantity and value of all the property embraced in the deeds, and that no portion of the debts could have been made from a sale of that property.
Hone of the witnesses examined by him, tell us anything in respect to the personal property, or what became of it. It is true that Mathews, one of the partners, seems to have been satisfied of the insolvency of Deem, aud to have paid Barclay his share or proportion of the bonds; but it is equally true that the other partners were not so easily satisfied, and have as steadily refused or declined to assume any such liability.
The testimony of the other witnesses examined by plaintiff, was given nearly twenty-five years after the date of the assignment, and the execution of the trust deeds, and relates to events and transactions with which neither was personally acquainted. It would be easy to show that all this evidence is wholly insufficient to establish plaintiff’s case. It is clear, as a general rule, the assignee must sue the maker or obligor before he can resort to the assignor. This rule is varied where it is pei'fectly manifest a suit would be wholly unavailing. It is equally clear, that where the debt which has been assigned, is secured by a specific lien, it is the duty of the assignee diligently to enforce Buch lien before he can have any recourse against the assignor. If he fails to pursue this course, it is incumbent upon him clearly to show that the security was worthless, and that no loss or damage has resulted from his lack of diligence. In the preseut case there is a manifest omission to establish these important facts.
*542 ■ It will be borne in mind, that tbe assignment was ma<^e the year 1843. If at that time the obligor was ^nso^ventj as is claimed, the assignors were immediately liable upon the contract of assignment. It was the duty Barclay then to institute his suit against his co-partners, or reasonably to notify them of his inability to colIect the debt. Let it be conceded, however, that Deem’s insolvency did not appear until the sale of his real estate in 1850. This suit was not brought until the year 1860— nearly ten years after the sale, and seventeen years after the assignment. After this long delay it is very doubtful, to say tbe least, whether there can now be a safe determination of the matters in controversy. The danger of injustice, from loss of information aud evidence, is great. And what is more material, the remedy of the defendants over against others is greatly impaired, if not wholly destroyed, by death and insolvencies. Under such circumstances, a court of equity should refuse to afford a remedy, though no statute -of limitations may directly affect the right of recovery. In Wagner v. Baird, 7 How. U. S. R. 234, 259, Mr. Justice Grier, quoting' the observation of Lord Camden, that nothing but conscience, good faith and reasonable diligence, can call this court into activity, used this language: “Length of time necessarily obscures all human evidence and deprives parties of the means of ascertaining the nature of original transactions; it operates by way' of presumption in favor of the party -in possession.” Doggett v. Helms, 17 Gratt. 96, and cases there cited; Tazewell’s ex’or v. Whittle's adm'r, 13 Gratt. 329.
In Deane v. Scholfield, 6 Leigh, 386, Judge Cabell, in discussing the duties and obligations .of assignees, said: “If the assignee attempts to rest it on the ground •.that he was under no obligation to pursue the maker, 1 he must equally fail; for even admitting that he was under no obligation to pursue him, then he should im\mediately have demanded the money from the assignor, *543 with an offer to return the note, that the assignor might take measures to recover from the maker. It would be against all justice that the assignee of a note should ■ seek to subject the assignor to its payment, after thus having held it up for years without any notification of his intention to hold him liable, and without offering him the means of saving himself by sueing the maker.”
These observations strongly apply to this case, and present controlling reasons for the rejection of the claim asserted by this bill. I think the chancellor erred in sustaining it; that the decree for this cause should be reversed and the bill dismissed.
■ The other judges concurred in the opinion of Staples, J.
The decree was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that the said decree is erroneous. Therefore, it is decreed and ordered, that the same be reversed and annulled ; and that the appellee, James H. Paxton, executor of Alexander T. Barclay, deceased, out of the assets of his testator in his hands to be administered, do pay unto the appellant his costs by him expended in the prosecution of his appeal aforesaid here. And this court proceeding to pronounce such decree as the said Circuit court ought to have rendered: It is further decreed and ordered, that the plaintiff’s bill be dismissed, and out of the assets of the testator in his hands to be administered, that he do pay unto the defendants their costs by them about their defence in the said Circuit court expended; which is ordered to be certified to the said Circuit court of Rockbridge county.