# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SCOTT'S ADM'R V. ISAACS AND ALS.

### January 31st, 1889.

PAYMENT—*Presumption—Lapse of time—Laches.*—For balance due on negotiable note, holder, a bank, got judgment in 1857 against maker and five endorsers. No execution was ever issued, nor was the judgment ever revived. In 1871 the bank was wound up and its effects sold, among them the note. The judgment does not appear to have been sold. Cashier testified that it never went into receiver's hands, and was never sold, and that balance on it was allowed the last endorser as attorney's fees. Said endorser died in 1862. In 1879 purchasers of the note filed it as their claim in a suit begun in 1868, for settlement of his estate. Prior endorser who, as sheriff, had served the process in the bank's action, and knew all about the matter, was dead. Former administrator of last endorser testified that in 1865 the bank filed its claims against the estate, but did not file this. In 1872 assignee of the bank brought suit to enforce lien of judgment obtained in 1859 against another prior endorser, wherein an account of liens was taken, and neither the note nor the judgment was mentioned ;

HELD:

The estate of the last endorser is not liable for the claim set up by the purchasers of the note, and the lapse of time and the circumstances offered grounds for the presumption of payment, and constitute such *laches* as to bar recovery.

Appeal from decree of circuit court of Fauquier county, entered September 19th, 1888, in two chancery causes there pending and heard together in said court, the one styled Rives and wife against Scott and others; the other styled Scott, administrator, against Isaacs, Taylor & Williams. Decree being adverse to Scott's administrator, he appealed. Opinion states the case.

*W. H. Payne,* for appellant.

*W. W. Gordon,* and *Christian & Christian,* for appellees.

FAUNTLEROY, J., delivered the opinion of the court.

Robert E. Scott was killed May 3d, 1862. In August, 1865, John A. Spilman qualified as his administrator, and continued to act as such until March, 1873. He was succeeded by John Scott, Jr., who qualified as administrator *d. b. n.* of Robert E. Scott, deceased, and continued as such until he died, in November, 1882. On the 27th of March, 1883, R. Taylor Scott (appellant) qualified in the county court of Fauquier county as administrator *d. b. n.* of Robert E. Scott, deceased, and also as administrator *c. t. a.* of John Scott, Jr., deceased.

Chancery proceedings were instituted in July, 1868, in the circuit court of Fauquier county by J. Henry Rives and wife (the son-in-law and a daughter of Robert E. Scott) against the heirs-at-law and personal representatives of Robert E. Scott, deceased, and, in August, 1869, an amended bill was filed, the object of which suit was to administer the estate of said Robert E. Scott, under the guidance of the court aforesaid. John A. Spilman, administrator of said Scott, deceased, settled in this cause his administration accounts. Creditors of the estate were convened; real estate was sold, and his intestate's debts were paid, in accordance with reports returned and decrees entered in the said cause. On the 22d day of April, 1879, after this suit had pended almost eleven years, Isaacs, Taylor & Williams filed their petition in this suit, claiming to be lien creditors of Robert E. Scott, deceased, and seeking to set up a judgment which had been obtained by the president and directors of the Farmers Bank of Virginia against Waynefield Floweree, Thomas L. Floweree, Wellington W. Cocke, William M. Hume, John Strother, and Robert E. Scott at the April term, 1857, of

Fauquier circuit court for $8,000, with interest from 24th day of March, 1855, till paid, and the costs.

John Scott, Jr., then administrator *d. b. n.* of Robert E. Scott, deceased, answered this petition, and the matter in controversy was referred to a master commissioner, who took testimony and reported adversely to the claim of the petitioners, Isaacs, Taylor & Williams, who thereupon excepted to the said report, and their exception was sustained by the court in the decree entered April 24th, 1880.

On the 3d day of November, 1883, R. Taylor Scott, administrator *d. b. n.* of Robert E. Scott, deceased, and as administrator *c. t. a.* of John Scott, Jr., deceased, filed his bill of injunction and review against Isaacs, Taylor & Williams. The injunction was granted; depositions were taken, and again, by decree entered September 13th, 1884, reference to a master commissioner was ordered. The master reported August 27th, 1885, to which report the appellant, R. T. Scott, administrator *d. b. n.* of Robert E. Scott, deceased, excepted. His exceptions were overruled, and the decree of September 19th, 1885, was entered, holding the estate of Robert E. Scott, deceased, liable to the claims of Isaacs, Taylor & Williams, as aforesaid, for the balance due upon the judgment aforesaid, the sum of $927.52, with interest thereon from 24th day of September, 1859, and the costs.

Robert E. Scott was the fifth and last endorser, and the sixth obligor, upon a negotiable note for $8,000, dated Alexandria, Va., January 20th, 1855, payable sixty days after date at the office of discount and deposit of the Farmers Bank of Virginia at Alexandria, drawn by Waynefield Floweree and endorsed W. Floweree, Thomas L. Floweree, W. W. Cocke, Wm. M. Hume, John Strother, and R. E. Scott. Upon this note Robert E. Scott, the eminent attorney, in whose professional hands the debt due the said bank, evidenced by the negotiable note aforesaid, was placed for collection, made the following payments, viz: On November ·

21st, 1855, $2,538.49; on April 20th, 1857, $1,052.23; on January 22d, 1859, $3,037.79; on September 24th, 1859, $1,900.30; aggregating total payment of $8,528.81, leaving an unpaid balance of $927.52, as of date September 24th, 1859.

The Farmers Bank of Virginia obtained a judgment at the April term, 1867, of the circuit court of Fauquier, upon the said negotiable note for $8,000, against the drawer and endorsers thereof. Upon this judgment no execution was ever issued; and it was never docketed until February 15th, 1867, and no effort was ever made to revive the judgment by *scire facias.*

By a decree of the United States circuit court for the Eastern district of Virginia, in the suit of Bayne and others against the President and Directors of the Farmers Bank of Virginia, dated April 13th, 1871, and signed John C. Underwood, district judge, one David J. Saunders, receiver, etc., was ordered to sell *for cash,* at public auction, at the front door of the custom-house in the city of Richmond, all the bills receivable, judgments and other effects of said bank, whatever or wherever they may be. At this sale, made June 10th, 1871, Isaacs, Taylor & Williams "were the purchasers of a note of W. Floweree for $8,000, endorsed by R. E. Scott and others," as appears from the report of the sale, certified by the clerk of the said court.

There is nothing in the record to show that Isaacs, Taylor & Williams bought the *judgment* which had been obtained upon the said note in April, 1856, and into which the note had become merged; and William H. Marbury, the cashier of the said Farmers Bank at Alexandria, testified in these suits that "*this judgment* was never surrendered to Saunders, receiver," etc., and never under his control; and, so far as he knew (and he was present at the sale), it was not sold. But it is certified by the clerk of the said circuit court of the United States, that at the said sale of the effects of the Farmers Bank of Virginia, made as aforesaid, Isaacs, Taylor & Williams were the purchasers of a note of W. Floweree for $8,000, endorsed by R. E. Scott and others; and, by virtue of this purchase made June

10th, 1871, they file their petition on the 22d day of April, 1879, in the suit of Rives and wife against Scott, &c., claiming, as assignees of the old debt due the Farmers Bank of Virginia, to come into the circuit court of Fauquier county, in equity, and to enforce against the estate of Robert E. Scott, the old judgment which had been obtained by the said bank, in April, 1857 — twenty-two years before, and on which no execution had ever. issued, and no attempt ever made to revive by *scire facias.*

The judgment was against six solvent, and some wealthy citizens of Fauquier county, living only about fifty miles from the creditor bank, on the 24th of September, 1859, when Robert E. Scott, the counsel of the bank to collect the debt, made the last of a series of payments, leaving a balance of $927.52; which said apparent balance William H. Marbury, the cashier of the said bank, testifies has been paid or discharged in full, by the allowance to Mr. Scott of his reasonable fees for suit and collection of the debt. The said William H. Marbury, cashier and executive officer of the judgment creditor bank, after stating specifically how and when the payments had been made, states, in answer to the question, "After the lapse of time since the transaction being inquired into, state whether or not, from all that the books of the bank show, and the information personal to yourself bearing upon the said transaction, the judgment in favor of the branch of the Farmers Bank of Virginia against Waynefield Floweree, Robert E. Scott and others, hereinbefore referred to by you, has been fully discharged and paid?" "I believe that it has been—from my own personal information, and from the books of the bank."

The judgment creditor—the bank itself—could not collect the apparent balance unpaid, because their books show and their cashier testifies, that the debt has been paid and discharged in full. And if Isaacs, Taylor & Williams have, in fact, any title to the judgment which they seek to enforce, they are *assignees,* and take only the right and title of their *assignor*—who, the evidence in the record shows, had been paid and satisfied the

debt evidenced by the judgment, in September, 1859—more than eleven years before Isaacs, Taylor & Williams came in at the death of and the *omnium gatherum* sale of all the effects of the said bank, at the front door of the custom-house in the city of Richmond, June 10th, 1871, under a decree of "John C. Underwood, district judge"; and nearly *twenty* years before they filed their petition in the ended family suit of Robert E. Scott's heirs to settle his estate. Robert E. Scott had been dead for seventeen years, and the drawer of the note and all of his prior endorsers had died insolvent, before Isaacs, Taylor & Williams filed their petition in the suit of Rives and wife against Scott.

William M. Hume, a prior endorser, who, as sheriff of the county of Fauquier, served the process in the suit of the bank to obtain the judgment, knew all the endorsers upon the note, and all about the transactions touching its payment; and who declared to the master commissioner who had been ordered to "inquire and report whether the claim asserted by Isaacs, Taylor & Williams has been paid, in full or in part," that to his personal knowledge the judgment had been paid, was dead; and his testimony lost.

John A. Spilman, who qualified in 1865 as administrator of the estate of Robert E. Scott, and advertised a public general call upon the creditors to make known and present their claims against the estate, testifies that, in response to this call, the Farmers Bank of Virginia at Alexandria presented to him and settled with him, as administrator, claims which they held and preferred against Robert E. Scott's estate, and that the said bank did not then or ever assert or make known to him that " they held or demanded anything upon this judgment; and that he thought and acted on the belief that he had, at this settlement, adjusted all the claims held by the bank against the estate of his intestate.

*Twenty-two years* had elapsed since the rendition of the judgment, when Isaacs, Taylor & Williams first asserted their claim to this " *stale demand*," after the death of all the defen-

dants to the suit, and of all the numerous persons who could have had personal knowledge touching the transaction. John Strother, a prior endorser to R. E. Scott, died seized of real and personal estate more than ample to pay the whole of the note to the Farmers Bank of Virginia for $8,000, or the judgment thereon in their favor; and in 1872 the suit of Spilman, assignee of the Farmers Bank of Virginia, against Hume, personal representative of John Strother, deceased, was to enforce a judgment lien against Strother's estate, obtained by the said Farmers Bank of Virginia at Alexandria, Virginia, at April term, 1859, of the circuit court of Fauquier county; in which said suit reports were made by the master commissioner of the liens by judgment and otherwise binding said Strother's estate and their priorities; and in none of these reports is the judgment lien, now asserted by Isaacs, Taylor & Williams, as assignees of the said bank, mentioned or in any form demanded. The Farmers Bank of Virginia and its assignee, Spilman, applied to the satisfaction of their *inferior* judgment lien' the estate of Strother, which was bound by the *prior* lien of the judgment now sought to be enforced against the estate of R. E. Scott, who was a subsequent endorser to said Strother upon the note which is the basis of the judgment; and by the *laches* of the said bank and its assignee, in not asserting their prior lien against Strother's estate, the estate of R. E. Scott has lost its recourse against the estate of his prior endorser and surety, John Strother, which has been thus applied and appropriated by the judgment creditor bank. This fact, of itself alone, makes it inequitable and inadmissible now, after the lapse of twenty-two years, to enforce the demand of Isaacs, Taylor & Williams for the satisfaction of the doubtful and merely apparent balance of this antiquated and stale claim of their assignor, the bank, out of R. E. Scott's estate.

In the case of *Smith and als.* v. *Thompson's Adm'r*, 7 Gratt., this court said: "The pretensions of the plaintiffs against the representatives of Smith are at war with the sound and well

settled doctrine of equity, derived not merely from the presumptions and bars which prevail at law, but still more comprehensive, and founded upon considerations of policy and justice that require those who invoke its jurisdiction to do so within a reasonable time, instead of lying by until, by their supineness and negligence, there can no longer be a safe determination of the controversy, and their adversaries are exposed to the danger of injustice from loss of information and evidence, and means of recourse against others, occasioned by deaths, insolvencies, and other natural circumstances. The application of this equitable doctrine is for the sound discretion of the equitable forum, and does not require the conviction of the courts against the original justice of the claim, or of any other specific ground of defense, but its belief that, under the circumstances of the case, it is too late to ascertain the merits of the controversy."

In *Waggoner* v. *Baird*, 7 Howard, U. S. Reports, Mr. Justice Grier, quoting the observation of Lord Camden, that nothing but conscience, good faith and reasonable diligence can call a court of equity into activity, said : "Length of time necessarily obscures all human evidence, and deprives parties of the means of ascertaining the nature of original transactions."

In the case of *Wilson's Adm'r* v. *Barclay's Ex'or,* 22 Gratt. 534, Judge Staples said for this court: "This suit was not brought until * * ten years after the sale and seventeen years after the assignment. After this long delay it is very doubtful, to say the least, whether there can now be a safe determination of the matters in controversy. The danger of injustice from loss of information and evidence is great, and, what is more material, the remedy of the defendants over against others is greatly impaired, if not wholly destroyed, by death and insolvencies. Under such circumstances a court of equity should refuse to afford a remedy, though no statute of limitations may directly affect the right of recovery."

All six of the judgment debtors were dead, and all others who had information of the matters in controversy were dead

when Isaacs, Taylor & Williams asserted this twenty-two year old judgment lien against the estate of the sixth and last judgment debtor.

The judgment creditor bank not only did not issue an execution on the judgment from April, 1857, to April, 1861, but it settled its claims, by judgment and otherwise, with R. E. Scott's administrator, Spilman, in 1865, and did not claim or assert this judgment; and Isaacs, Taylor & Williams gave no sign nor made any attempt to claim or collect it until more than eight years after their alleged purchase of it. They knew that R. E. Scott had been long dead, and by their delay, as well as the *laches* of the bank, they have caused the loss, by death and insolvencies of all the six judgment debtors, and of Hume, the sheriff, and others who knew all about the matter in controversy, of the means of obtaining evidence to enable R. E. Scott's representatives and heirs to prove the payment of this stale and antiquated demand.

We are of opinion that the circuit court of Fauquier county erred in deciding "that the estate of Robert E. Scott, deceased, is liable for the claim set up in the petition of Isaacs, Taylor & Williams, the court being of opinion that there was no such lapse of time in the assertion of the claim as to raise the presumption of payment, or constitute such *laches* as to bar recovery." The said decree complained of is wholly erroneous, and must be reversed and annulled; and this court will decree that the petition of the appellees, Isaacs, Taylor & Williams, filed April 22d, 1879, in the suit of Rives and wife against Scott, etc., in the said circuit court, be dismissed, with costs to appellants.

LEWIS, P., dissented.

JUDGMENT REVERSED.