## Wytheville.

### PAYNE'S EXORS. v. HUFFMAN.

#### JUNE 21, 1900.

#### Absent, Riely, J.*

1. ASSIGNOR AND ASSIGNEE—*Diligence—Recourse—Case in Judgment.*—
   Due diligence must be used to charge either a guarantor or an
   assignor. The assignee being entitled to recover of the assignor on
   the grounds of failure of consideration, it will devolve on him to
   show (unless otherwise agreed) that he used due diligence to col-
   lect the debt of the debtor, but used it in vain. What is due dili-
   gence cannot be precisely defined, but immediate suit, followed by
   execution, is always due diligence, though this is not indispensable.
   In the case in judgment, the assignee has not only failed to show
   due diligence or lack of injury to the assignor, but the evidence
   tends to show that if diligence had been used the debt could have
   been made out of the principal debtor, and therefore the assignee
   cannot recover of his assignor.

Appeal from a decree of the Circuit Court of Giles county,
pronounced May 30, 1899, in the chancery suit of *Sibold* v.
*Sartin,* to which appellants and others were made parties by a
cross-bill filed by the appellee.

*Reversed.*

The opinion states the case.

*Henson & Mason* and *J. M. Payne,* for the appellants.

*S. W. Williams,* for the appellee.

*Judge Riely was prevented by sickness from attending this term.

CARDWELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Giles county.

In the view we take of the case it is unnecessary to consider the questions arising on the demurrer to the cross-bill filed by appellee, so elaborately argued at bar.

The case is as follows: On the 16th day of September, 1878, John L. Sartin and wife executed a deed of trust to John A. Echols, trustee, conveying real estate in Giles county to secure and indemnify Charles H. Payne as surety for John L. Sartin on certain bonds executed by Sartin to one J. D. Johnson, commissioner. These bonds were paid by Payne, and he was proceeding to enforce the deed of trust, when Sartin prevailed on one W. A. French to buy Payne's interest in the deed of trust, French paying Payne therefor $430.30, for the purpose of holding it up and giving Sartin more time; and on April 30, 1883, Payne assigned all right, title and interest he had in the deed of trust to French, and French, as he had previously agreed to do, held up the deed some two years, when he caused the property to be advertised for sale under the deed. On the day of sale, Sartin and the appellee, Martin Huffman, made an agreement with French, whereby Sartin was to execute to French a negotiable note for the amount claimed under the deed, with Huffman as endorser, payable six months after date, in consideration of which French was to postpone the sale under the deed until the maturity of the note; and it is alleged, though not clearly proved, that French agreed to assign his interest in the deed of trust to Huffman, if the note should be paid at maturity by Huffman. Huffman did not pay off the note at maturity, but finally paid it, and on October 3, 1891, French assigned his interest in the deed to Huffman. In the mean time, Charles H. Payne had died, and one Sibold had filed a bill and an amended bill in the Circuit Court of Giles county, to subject

to the payment of a judgment he had against John L. Sartin, the land conveyed in the deed, making Sartin and wife, Payne's executors, Echols, trustee, French and Huffman parties defendant thereto. The bill alleged that while Huffman claimed to be the owner of the trust deed, it was untrue, and that in fact the deed was no longer a valid lien on the land in question. Upon the bill taken for confessed, an account of liens on the land was ordered, and a commissioner reported that Sibold's judgment was the only lien on the land, and that the rental value of the land was $100 *per annum,* and that the rent would pay off the judgment in less than five years, which report was confirmed. Huffman, without having answered the bill filed by Sibold, or excepting to the commissioner's report, caused the land to be advertised for sale under the deed of trust, but the sale was stopped by an injunction obtained upon a bill filed by Sartin and wife, to which Huffman and Echols, trustee, were made parties defendant. Sibold's debt having been paid off, and John L. Sartin having died, a sale of the land was decreed for Huffman's benefit, and it was sold April 18, 1893, Huffman becoming the purchaser at the price of $350. He then let the matter lie for four years, when he had the sale confirmed, and filed his cross-bill in the first-named suit to have recourse on the executors of Charles H. Payne, his remote assignor, for the balance due on the debt he claimed was secured to him by the trust deed, after crediting the net proceeds from the sale of the land, and the court decreed in his favor against Payne's executors for this alleged balance, amounting to over $500.

The record shows that the deed of trust was valid as to one-sixth interest in the estate conveyed, and as to the life interest of John L. Sartin in the other five-sixths, and that even the rental value of the land was $100 *per annum,* so that if these interests of John L. Sartin in the land had been subjected in his lifetime, certainly within a reasonable time after the assignment by Payne to French, the debt secured by the deed

would have been paid in full; and even if the one-sixth interest had been subjected immediately after the assignment by Payne, and it had only brought the price it finally sold for, and the proceeds applied then to the debt, they would have nearly extinguished it. But there was a delay of nearly ten years. In the mean time, John L. Sartin's life estate in five-sixths of the land was diminishing in value by reason of his advancing age, and finally extinguished by his death, and no sort of effort is shown to have been made to make the money out of the personal estate owned by Sartin in his lifetime, or after his death.

We leave out of view the question whether or not by the extension of time given by both French and Huffman to Sartin, Charles H. Payne was released from all liability to either of them on the assignment by him of his interest in the deed of trust, for while no amount of passive indulgence will relieve an absolute surety, the contract of a guarantor of collection, and of an assignor, is very different from that of a surety. Due diligence must be used to charge either a guarantor or an assignor. The assignee being entitled to recover of the assignor on the ground of failure of consideration, it will devolve on him to show (unless by agreement it be otherwise arranged), that he used *due diligence* to collect the debt of the debtor, and used it in vain. What is due diligence is not susceptible of a precise definition. An immediate suit duly followed up by an execution, etc., is *always due diligence*, even though it may not be the surest way to make the money. Still, immediate suit is not *indispensable* if the assignee can show that by reason of the debtor's insolvency or otherwise a suit would have been unavailing. 3 Minor's Insts., pt. 1, 437, and authorities there cited. Says this learned author: "*Two years* delay to sue will discharge the assignor in all cases, unless the debtor be insolvent, or the assignee be exempt by agreement from the obligation of diligence." *Thompson* v. *Govan,* 9 Gratt. 695; 2 Rob. Pr. (2d ed.), 276-7.

In the case at bar, there is not only a total absence of an agreement exempting either French or appellee, Huffman, from the obligation of *diligence,* and of allegation or proof of the insolvency of John L. Sartin during the eight years he lived after the assignment by Payne to French, but, on the contrary, the record clearly shows, as we have seen, that if the deed of trust had been enforced with promptness, the one-sixth interest in the land conveyed would have nearly paid the debt secured, and that, if any effort had been made within a reasonable time, to collect of Sartin the balance, if any, of the debt secured by the deed, it could have been made out of Sartin's life estate in the five-sixths interest in the land owned by his wife, if not out of his personal estate, as this life estate, or *usufruct* in Sartin, is shown to have been worth $83.33 *per annum,* which, added to the one-sixth interest in the land owned by Sartin in fee, would have, in 1883, and for several years thereafter, more than repaid the amount paid Payne by French.

Appellee has not shown, and it is manifest that he could not show, that no loss or damage has resulted from his, or his immediate assignor's, lack of diligence. As was said by Staples, J., in *Wilson* v. *Barclay,* 22 Gratt. 534, a case very similar to the case at bar: "Under such circumstances, a court of equity should refuse to afford a remedy, though no statute of limitations may directly affect the right of recovery."

We are of opinion to reverse the decree appealed from, and this court will enter such decree as the Circuit Court should have entered, dismissing appellee's cross-bill with costs to appellants.

*Reversed.*