# CHARLESTON.

## JACKSON v. HOUGH.

Submitted June 16, 1893.— Decided November 15, 1893.

1. ASSUMPSIT—PLEADING.

On the facts the action was properly *indebitatus assumpsit* for

money had and received, not for services rendered. The common count for money had and received was proper.

2. ASSUMPSIT—PLEADING.

The action of *assumpsit* is an equitable action and applicable to almost every case where money has been received by one, which in equity and conscience ought to be refunded or paid to another.

3. ASSUMPSIT—PLEADING.

Where a plaintiff has done everything, which has to be executed on his part, and nothing remains to be done but the performance of a duty on defendant's part to pay money due the plaintiff under contract, the plaintiff may recover on the common counts in *assumpsit*, and need not declare specially.

4. ASSUMPSIT—PLEADING.

On the facts the consideration was sufficient to render the defendant's promise enforceable.

5. LIMITATION OF ACTIONS.

Against a demand for money had and received by one for the use of another, the period under the statute of limitations is five years, and it begins on the receipt of the money.

6. EVIDENCE—REVERSAL OF JUDGMENT.

Where a question is not allowed to be answered by a witness, and the question does not itself import that its answer will prove a fact material, and it does not otherwise so appear, the refusal to allow it to be answered will not be ground of reversal.

7. BROKER—CONSTRUCTION OF STATUTE.

One single sale of land for reward by one for another taken alone without anything to show that the former professed to follow or practice the business of a broker, buying or selling for others stocks, securities, or other property for commission or reward, will not make him such broker, under section 2, c. 32, Code.

U. N. ARNETT, Jr. and JOHN W. MASON for appellant cited Bish. Const. Law §§ 438, 457, 458; Bish. Stat. Cr. § 1030; 2 W. Va. 517; 11 Wheat. 258; 1 Rand. 98; 32 Ala. 30; 11 Humph. 1; 26 Vt. 184; 1 Par. Const. 458; 1 Taunt. 136; Code, c. 32, s. 2.

A. B. FLEMING for appellee cited 4 Min. Inst. 576; 4 Rob. Pr. 497, 498; 23 W. Va. 619, 632; 18 W. Va. 630; 5 W. Va. 190; 9 Leigh 532.

BRANNON, JUDGE:

Jackson brought *assumpsit* against Hough and recovered

judgment, and Hough brought the case up by writ of error. Hough wanted to sell his farm. Jackson thought he could make something by selling it. He knew Adams wanted to buy a farm, and without knowledge or request of Hough went to Adams, and negotiated with him a sale of the Hough farm for six thousand dollars, payable in six bonds on Sharpneck of one thousand each, given to Adams. After this agreement between Jackson and Adams, Adams sent for Hough. Hough's price for his farm was five thousand dollars. When Hough came, Jackson asked him whether he would take five one thousand dollar bonds on Sharpneck, indorsed by Adams, for his farm, and Hough answered that he would. Then for the first time Jackson told Hough that he had without his knowledge sold his farm over thirty days since for six notes of one thousand dollars each, and that he would do better by Hough than his first proposition; he would divide the proceeds of the last due Sharpneck bond, and Hough agreed to it. Jackson then caused a deed to be drawn from Hough to Adams, which Hough executed and committed to Jackson's hands, to be delivered to Adams when the transaction should be consummated; and Adams met Jackson, delivered to him the six Sharpneck notes and received the deed. Adams did not assign the notes to any one by name but simply indorsed his name on them. Hough was not present and had no participation in the delivery of the notes and deed. The transaction was between Jackson and Adams only. Hough needed the money and hesitated to take notes for his farm, but he and Jackson concluding in their interview above mentioned that the notes could be discounted, Hough agreed to take them as above stated. After Jackson received the Sharpneck notes he handed them over to Hough, in order that Hough might have them discounted by a certain person named by Hough, who, as he thought, would buy them. Both Jackson and Hough tried to sell the Sharpneck notes. They made together a fruitless trip to Wheeling for the purpose. Finally Hough sold the last note. Learning this, Jackson demanded half its proceeds. Hough refused to pay. Jackson sued, and recovered a verdict and judgment for half its proceeds.

For the appellant it is contended that, as the declaration, which contains only the common counts, contained no count for work, labor and service, there could not properly be a recovery, as Jackson's claim, legally viewed most favorably to him, is for services in selling Hough's farm, and the agreement to pay half its proceeds to Jackson only a measure of compensation. If such were the character of Jackson's claim, this would be true. But I think his demand can properly be regarded as for half the proceeds of the sale of the last due Sharpneck note—that is, for money received by Hough which he should *ex æquo et bono* pay Jackson— and therefore recoverable under the count for money had and received by defendant for the use of the plaintiff. I regard the services as settled by the agreement to take half the proceeds of the note.

Suppose, before sale of it, Jackson had sued on the *quantum meruit* for services only, could he recover having agreed to take pay out of the note and just half of its proceeds? After sale of it, could he sue only for services? If, on Hough's refusal to pay, Jackson might fall back on his services, it would be because Hough would be deemed to have repudiated that contract; and even then it would give Jackson election as to the form of his demand. He might sue for half the money for which the note sold. It is immaterial whether Jackson and Hough were joint owners holding equitable title to this note itself, or Jackson became owner of half the money from its sale; for in either case Jackson could go for half the amount arising from its sale.

Here is money in one man's pocket received under circumstances which call upon him *ex æquo et bono* to pay, and we need not refine as to the title to the note, whether in one or both parties; and, the action of *indebitatus assumpsit* being an equitable action, relief can be had by it for money had and received. If for my services to you we agree that I shall be paid by half the proceeds of the sale of your horse, which we agree shall be sold, and you sell it, why may I not sue for half the money? Such was our contract. Did we not both contemplate or realize that the effect would be to give me right to half this money? Plaintiff

is not suing for the note, but, as his account filed with the declaration and giving specification plainly of the nature of his demand clearly shows, he is suing for money had and received—for half the proceeds of the Sharpneck note; and, *assumpsit* being an equitable action, he can recover under the count for money had and received, it being applicable to almost every case, where money has been received, which in equity and good conscience ought to be paid or refunded to another. *Thompson* v. *Thompson*, 5 W. Va. 190.

As Jackson had done all on his part, and nothing remained but for Hough to pay over the money, no special count was needed, but only the general count. *Moore* v. *Supervisors*, 18 W. Va. 630; point 10 of syllabus in *Darisson* v. *Ford*, 23 W. Va. 619; 4 Rob. Pr. 497. I, however, do not understand counsel to contend for a special count, but for one for service performed. I hold, therefore, that Hough held the note in trust for Jackson as to half its proceeds when sold, and that Jackson can sue for money as coming from this trust-property. It grows out of a trust, and is one enforceable at law by *assumpsit*.

But it is said, that no consideration supports the promise of Hough to sell the Sharpneck note and pay half its proceeds to Jackson;—that it is simply an unexecuted promise to make a gift and not enforceable. I think the consideration is quite apparent. Jackson's knowledge, influence and business capacity found a purchaser and effected an oral agreement for the sale of the farm. True, this was not at Hough's request, but he ratifies and adopts it, and that probably would validate the act of agency *ab initio*. Hough avails himself of it, and derives a positive benefit ultimately in the consummation of the sale. That is enough; but it is not all. Jackson reports his action under this self-assumed agency to Hough, who approving it authorizes Jackson to complete the sale of his farm, and after this Jackson went on applying his capacity, influence and care to the preparation of a deed and the full consummation of the sale. Here is service and talent applied by Jackson in making a sale; here is benefit to Hough; here is plainly valuable consideration on both sides, and consti-

tuting valid consideration as defined in all the books. 3 Minor, Inst. 17; 2 Kent. Comm. 465; 2 Bl. Comm. 297. Trouble of the party to whom the promise is made and benefit to the party making it will make binding consideration. We find no injustice in the claim. By the sale effected by Jackson, Hough realized five hundred dollars more than he asked for the farm. What does he lose by paying Jackson? Nothing that is not justly Jackson's. Perhaps without Jackson's aid he could not have sold at all or not so well.

As to the point that the demand is barred by limitation. Suit was begun within five years from the sale of the note by Hough, the time when Jackson's right to sue for his money first accrued. *Scott* v. *Osborne*, 2 Munf. 413; 1 Rob. Pr. 485.

Is there error in refusing to allow Jackson to be asked as a witness the question, whether he had license to engage in the business of real-estate agent or broker? No evidence had been given or was proposed to show that he carried on the business of real-estate broker, save this single sale. Is it possible that one sale of real estate by a party not professing to practice the business will make of him such broker? The statute says no-one shall without a license "practice the business of a stock or other broker by buying or selling for others stocks, securities or other property for commission or reward." Code, c. 32, s. 2. If a person sell one drink of liquor without a license, he violates the statute on that subject, as it says he shall not sell; but here the word "practice" is used, meaning to exercise or follow a profession or calling as one's usual business to gain a livelihood; and the word "business" is used as the object of the verb "practice," and there is hardly to be found a word more strongly conveying the idea of a permanent calling for a support. If one should undertake or profess to follow that business, no doubt one sale would be sufficient to bring him within the letter and spirit of the statute; but one is not within its letter or spirit who, without any manifestation of carrying on such vocation, merely makes one sale.

I suppose that the purpose of the question was to elicit

the fact that Jackson had no such license, and then contend that he could not recover because to allow him to do so would be against the policy of the law, as it would enforce a demand in favor of a party' violating the license-law arising from a transaction which he was prohibited from doing. The question proposed to call out the answer that he had no license, I assume, and thus prove that isolated fact, which, in connection only with this one sale, would not make Jackson a broker, and would therefore be immaterial. This question does not itself, like that in *Gunn* v. *Railroad Co.*, 36 W. Va. 165 (14 S. E. Rep. 465) import proof of anything but that single fact, which itself would be immaterial. There was no intimation that it was to be followed up by other questions or evidence that Jackson practiced the business of broker. If we should think that an unlicensed broker could not recover his commission, yet the single fact that Jackson had no license would not bring him within the rule. Suppose we should for this reverse. For what good, when we see no probability that further evidence is in the possession of appellant? We affirm the judgment.