# CHARLESTON.

MERCHANTS' NATIONAL BANK OF W. VA. *v.* SPATES.

Submitted June 16, 1895—Decided Nov. 13, 1895.

1. NON - NEGOTIABLE INSTRUMENTS -- ASSIGNMENT -- IMPLIED WARRANTY.

   Where a party assigns a non-negotiable instrument calling for the payment of money, by writing his name across the back and delivering it, he warrants by implication, unless otherwise agreed, its validity, his right to assign, that it is a subsisting unpaid debt, and the solvency of the debtor.

2. NON - NEGOTIABLE INSTRUMENTS — INVALID INSTRUMENTS— BREACH OF IMPLIED WARRANTY—ACCRUAL OF RIGHT OF ACTION.

   If such instrument is illegal, and therefore invalid, there is an immediate breach of such implied warranty, and the right accrues at once to the assignee to recover back the consideration paid in an action for money had and received to his use.

3. NON-NEGOTIABLE INSTRUMENTS – STATUTE OF LIMITATIONS.

   The statute of limitations in such case is five years, and it begins to run from the date of the breach of such implied warranty

of the validity of the instrument assigned, unless something appears to avoid the commencement of the running of the statute at that date.

4. NON-NEGOTIABLE INSTRUMENTS—ACTION AGAINST ASSIGNOR —EVIDENCE.

In an action by the assignee against an assignor of a non-negotiable instrument, the plaintiff, to maintain his action, must show that the maker was insolvent at the time the instrument was made or the contents fell due, or that he has used due diligence to recover from the maker and failed, or that from some cause such a suit would have been of no avail.

5. NON-NEGOTIABLE INSTRUMENTS—INVALID INSTRUMENTS—NOTICE TO ASSIGNOR—NEGLIGENCE.

If the instrument assigned was illegal and invalid, and the assignee relied upon such invalidity as excusing him from attempting by suit to collect the money, he should have given timely notice to his assignor of his reason for not suing, and should have offered to return the instrument; and if in this the assignee was guilty of negligence to the damage of the assignor, he can not recover against him the money paid in consideration of the assignment.

JOHN BASSEL and W. P. HUBBARD for plaintiff in error cited 9 W. Va. 397; 23 Pick. 24; 14 N. Y. 162; 12 Wall. 349; 12 Wall. 348; 22 Wis. 447; 11 Wheat. 258; 26 Vt. 184; 19 Conn. 421; 20 Johns. 386-97; 35 Kans. 709; 22 Ind. 207; 31 Wis. 647; 87 Mo. 370; 13 Bos. & P. 295, 296; 7 Taunt. 246; Burr. 2069; 6 Term Rep. 410; 17 How. 232; 9 W. Va. 391, 400, 401; 9 Leigh, 473; 9 Bing. 748; 41 Fed. Rep. 589-90; 91 N. Y. 112; 1 Rob. Pr. (New) 477; 2 Rob. Pr. 275-76; Wood's Lim. Act. (1st. Ed.) § 143.

M. M. THOMPSON, C. W. LYNCH and JOHN J. DAVIS for defendant in error, cited 4 C. C. A. (Tex.) 460; 111 U. S. 83; 147 U. S. 230, 235; 10 Wall. 676; 102 U. S. 278; 38 W. Va. 104; And. Dict. p. 1092; 9 Wall. 75; 28 W. Va. 273, pt. 6 Syl.; 9 Leigh, 473; 52 Fed. Rep. 350; 12 Peters, 32; 19 N. E. 48; 6 Peters, 8 Syl. pt. 4; 3 Leigh, 474; 1 Eng. L. & E. 44; 18 S. E. Rep. 575, Syl. pt. 5; 9 W. Va. 391; 11 Wheat. 258; 15 Wall. 439; 8 Wall. 1; 2 Wash. 233; Bus. Lim. § 174.

HOLT, PRESIDENT:

This is a suit by the bank, assignee, against Thomas S. Spates, assignor, to recover a county draft which can not

be collected, and recover back the money paid therefor by the bank. There was judgment below on demurrer to evidence for defendant, Spates, and the bank has appealed.

In 1887 the court-house and jail of Roane county were destroyed by fire. On the 7th day of February, 1888, the County Court made a contract with E. W. Williams to repair them for the price of twenty one thousand eight hundred dollars, and to be completed against the 15th day of April, 1889. The price was to be paid in three installments, as follows: Five thousand four hundred and fifty dollars to be paid when the work was commenced; the second installment, of eight thousand one hundred and seventy five dollars, to be paid when the work was half done; and the third installment, of eight thousand one hundred and seventy five dollars, being the residue in full to be paid when the court-house and jail were completed according to the plans and specifications. The first installment was to be paid in county orders, made payable out of the levy of 1888, to be delivered to Williams on the 4th day of June, 1888, and to bear interest from the date of issue. For the second installment, *viz.* of eight thousand one hundred and seventy five dollars, county orders were to be issued to Williams, payable out of the levy of 1889, bearing interest, to be delivered as soon as the work was half done; and the third installment was to be paid in county orders payable out of the levy of 1890. The county paid all these orders, except two, one for one thousand dollars, which was assigned to defendant, Spates, and by him was assigned to the plaintiff, the Bank of West Virginia, on the 2d day of November, 1888, for the sum of nine hundred and seventy five dollars. The other order was for one thousand dollars, and was assigned by Williams to the Merchants' National Bank of West Virginia on the 9th day of January, 1889, for the sum of nine hundred and sixty dollars. Both assignments were by indorsement in blank.

Section 8 of Article X of the Constitution prohibits the incurring of any indebtedness by a county court which can not be paid out of the funds on hand and the levy for the current fiscal year, unless all questions connected with the contracting of such debt shall have been first submitted to a

vote of the people, and have received three fifths of all the votes cast for and against the same. Code 1891, p. 46. Therefore, without such vote, a county court can not bind the levies of future years, and the assignee of such indebtedness has no greater rights to enforce payment thereof than his assignor. *Davis* v. *Wayne County Court* (1893) 38 W. Va. 105 (18 S. E. Rep. 373). See *Beard* v. *City of Hopkinsville,* 95 Ky. 239 (24 S. W. Rep. 872), and 44 Am. St. Rep. 222, and notes, for an exhaustive review of cases on the subject.

On the 9th day of February, 1894, the County Court for the first time refused to pay these outstanding orders, and notified the assignees of such refusal.

The general issue and the statute of limitations were pleaded, the plaintiff demurred to the evidence, and the court gave judgment for the defendant.

The assignment was made on the 2d day of November, 1888, and this suit was commenced on the 30th day of March, 1894, so that if the cause of action arose at the date of the assignment, five years having elapsed before the suit was instituted, it was barred by the statute of limitations, and there could be no recovery. The case of *Mackie* v. *Davis,* 2 Wash. (Va.) 219, was decided in 1796, and has been a leading case in Virginia and in this state on the general doctrine of the assignment of non-negotiable instruments, and the general doctrine there discussed has from that day to this been followed, expanded, and applied in many cases. For citation and discussion of the Virginia cases, see 2 Rob. Prac. 270, 276, *et seq.;* 1 Bart. Law Prac. 235, 321. As to the transfer of bills and notes by assignment, see 1 Daniel, Neg. Inst. 715 *et seq.* The assignment may be by delivery and writing the name of the assignor across the back of the instrument. This does not transfer the legal title, but the assignee, the equitable owner, may sue in his own name by virtue of the statute. The assignor warrants by implication, unless it is otherwise agreed, that it is a valid and subsisting debt, and that the maker of the instrument is solvent, or will be when the claim falls due. See *Slifer* v. *Howell;* 9 W. Va. 391-397, and cases cited; *Jackson* v. *Hough,* 38 W. Va. 236 (18 S. E. Rep. 575). See *Nichols* v. *Porter,* 2 W. Va. 13. As a general

rule, the assignee can not recover from the assignor the amount paid for the assignment, unless due diligence is used without effect against the debtor. But in no case is it necessary to pursue the debtor, if it be clear that such pursuit would be unavailing, as if the debtor be insolvent at the time of the assignment, or when the instrument falls due, or if it be null and void. See *Morrison* v. *Lovell* (1870), 4 W. Va. 346, 350. If the assignee attempts to excuse himself for not suing, then he should immediately have demanded the money from the assignor with an offer to return the instrument assigned, that the assignor might take measures to recover from the maker. *Drane* v. *Scholfield* (1835), 6 Leigh. 386, Cabell, J., page 394; *Wilson* v. *Barclay* (1872), 22 Gratt. 534, 542. See *Thompson* v. *Govan* (1853), 9 Gratt. 695, and cases cited 699.

It may be said that the assignor by implication warrants that the face of the order is a true description of its character; that it is genuine; that he is a lawful holder, having a valid title, and a right to transfer it; but that here, the county order being drawn upon and payable out of levies yet to be laid in years yet to come, thereby creating a debt without a vote of the voters of the county, and for that reason unconstitutional and void, showed upon its face that it was invalid, and not a charge upon the county, and that the plaintiff, the assignee, was presumed to know the law, and, in the absence of fraud and misrepresentation, could not recover the price paid the defendant [see *Christy* v. *Sullivan* (1875), 50 Cal. 337; *Otis* v. *Cullum* (1875), 92 U. S. 447; *Littauer* v. *Goldman* (1878), 72 N. Y. 506; 1 Daniel Neg. Inst. §§ 730*a*, 734*a*; *Rogers* v. *Walsh*, 12 Neb. 28; (10 N. W. Rep. 467)]; that the assignee got all he knowingly contracted for, and therefore he can not say he got no consideration, or that the consideration has failed, although the county order has turned out to be of no value (see Newmark, Sales, § 388, note 5). I do not deem it necessary to discuss this question further. I understand the law in this state to be: That when the assignor put his name across the back of this invalid order he guaranteed that notwithstanding its apparent invalidity, it would be paid if the assignee used due diligence to collect it,

and, if not paid when due, he would refund the money, with its interest; in other words, that he would make it good. That the assignment of the county order was a new contract, founded upon a new and valuable consideration, and that it was not rendered invalid by reason of the invalidity of the order. Such is the ruling in the case of *Morrison* v. *Lovell*, 4 W. Va. 346. It stands alone upon a new and separate consideration, given for a county order which was issued against law; not as evil in its nature, but only as a thing prohibited to be issued by the county court. See *Lemon* v. *Grosskopf*, 22 Wis. 447, (99 Am. Dec. 62, note). When the right of action accrues to the assignee to recover back his purchase money, the statute of limitations begins to run. This does not depend upon the time when a person ignorant or neglectful of his rights may come to a knowledge of them [*Thomas* v. *White* [1823] 3 Litt. 177], unless such ignorance or neglect is owing to the conduct of the assignor (*Jordan* v. *Jordan*, 1826), 4 Greenl. 175; Case of Broderick's Will, 21 Wall. 503, 513; *Townsend* v. *Eichelberger*, 51 Ohio St. 213 (38 N. E. Rep. 207).

In an action for deceit in the sale of property the cause of action accrues at the time of the completion of the sale, and the statute of limitations begins to run at once. *Rice* v. *White* (1833), 4 Leigh, 474. The same rule must apply in the assignment of an invalid county order. There is a breach at once of the implied warranty that it is a valid subsisting claim. The right of action accrues immediately, and the fact of the vendee's inability then to ascertain the quality or condition of the property will not change the rule. See Busw. Lim. § 176, and cases cited. The breach of warranty of the validity of the order then occurred. The failure of consideration may be said to be then complete, because none was received, and the right accrued to the assignee to recover back the money paid by action for money had and received. See *Jackson* v. *Hough*, 38 W. Va. 236 (18 S. E. Rep. 575). Against such demand the period under the statute of limitations is five years, and it begins on the receipt of the money, for that is the breach of the contract of implied warranty. It is not deferred until damages ensue. See 13 Am.

& Eng. Enc. Law, 722, and cases cited in note 4; 1 Rob. Prac. 480. And if there is anything, such as concealment or other conduct of the assignor or other thing, that will take the case out of the statute, it can only be availed of by stating it in a replication to the plea of the statute. *Short* v. *McCarthy*, 3 Barn. & Ald. 626; 1 Rob. Prac. 480 *et seq.; Rice* v. *White*, 4 Leigh, 474. See 1 Wood, Lim. § 140; *Leather Manufacturers' Bank* v. *Merchants' Bank* (1888) 128 U. S. 26 (9 Sup. Ct. 3); *Clapp* v. *Pinegrove Tp.*, 138 Pa. St. 35 (20 Atl. 836); Busw. Lim. §§ 176, 173; *East India Co.* v. *Paul*, 1 Eng. Law & Eq. 44; Ang. Lim. (6th Ed.) § 137, note; *Bank* v. *Daniel*, 12 Pet. 32. The law makes no postponement, and, if the assignor's contract or conduct authorized any, the assignee must plead and prove it. The substance of the statute is, every action to recover money, which is founded on such contract as this, shall be brought within five years next after the right to bring the same shall have first accrued. See Code 1891, p. 727, c. 104, s. 6. This order, on its face, was not payable before the 1st day of August, 1889, for that was the earliest period at which the sheriff could begin to collect the levy of 1889, and out of the levy of that year it was made payable on its face. Therefore the plain meaning of the contract of assignment, taking the order as valid, would be that the assignor was not to be called on to make the order good before that date. I see no reason why, if valid, it should not be given a construction so obviously in accord with what would in that event seem to be the manifest intention of the parties. And this view is sustained by some authorities. It was assigned and accepted on the theory that it would be paid when it fell due, not before, for many of them had been paid, and the sheriff said he would pay this one. See *Calhoun* v. *Railroad Co.* (N. Y.; 1890) 24 N. E. 27. But the assignee had the right at any time to treat the order as invalid, and sue to recover back the purchase-money, and this he has seen fit to do, treating the money received by the assignor as money had and received to his use, and thereby treating the implied warranty of validity as broken instanter. *Jackson* v. *Hough*, 38 W. Va. 236 (18 S. E. Rep. 575). The contract-

ing parties treated it in fact as a valid debt. The law says it is invalid, and it so appears upon its face, and knowledge thereof must be imputed to both the parties; hence the two different lines of argument. That part of the contract which comes in by operation of law must qualify or suppress the implication that the assignee must wait until the void order is due and payable before he can sue to recover back his money as paid without consideration. See *Leather Manufacturers' Bank* v. *Merchants' Bank*, 128 U. S. 26 (9 Sup. Ct. 3); Keener, Quasi-Cont. p. 142. Such is the rule as settled by the weight of authority as I understand it, and upon principle it seems to be well founded, although, like all general rules, liable to produce some hardship; but we must take care that hard cases do not make bad law. Without some such rule, we would be left at sea, without anything to go by except the varying circumstances of each particular case, which is tantamount to having no general rule at all. The rule, as we have seen, is subject to the exception that by contract or conduct the complete right of action may be made to accrue at a different time. See 1 Wood Lim. §§ 117-119, note 8; 1 Rob. Prac. (New) 477; 2 Rob. Prac. 275, 276.

I think the trouble with plaintiff's case is that in bringing its suit it went upon that part of the contract of assignment imported into it by operation of law by reason of the invalidity of the thing assigned, giving the assignee right of action instanter to recover his money back as paid without consideration, and therefore had and received by the assignor to his use, and in this I lay no stress on the mere form of the action. But when the assignee comes to answer the plea of the statute of limitations, then it wishes to go by the otherwise manifested intention of the parties that there was to be no right of recourse until the county order became due and payable, which necessarily implied that the order was treated as a valid and subsisting debt, whereas, on the contrary, such implication must be regarded as overridden by the fact that the law imputes to each of the contracting parties knowledge that the order is null and void. What facts does the evidence show which, if pleaded by replication in avoidance of the plea of the statute, could

have been held sufficient? (1) The county court accepted the work, laid the levies to pay for it, paid all except this order and another of like amount, and the sheriff kept promising to pay this one until 9th day of February, 1894. The county court entered an order declining to pay this order for the reason given that it was issued contrary to the Constitution of the state, and therefore null and void; and the sheriff was directed not to pay it on pain of having the same disallowed in his settlement with the court, and of this order the plaintiff had notice. (2) That the county order in question was not payable until 1st day of August, 1889, that being the earliest date at which the sheriff could begin to collect the taxes of 1889, and from that date five years had not elapsed before the bringing of the suit. (3) The banks at Clarksburg were remote from the county of Roane. The assignee knew that the order was issued in violation of the state Constitution, for it showed such invalidity on its face. This is imputed as matter of law, and, if the bank saw fit to let it lie for five years and five months, in the hope or expectation that it would be paid, it did it at its own risk. It knew that no suit could be maintained on it. It was therefore useless to wait until August, 1889, for the sole cause of action was the want of consideration, because the county order assigned to the plaintiff was not a valid subsisting debt at the time of the assignment. Then arose plaintiff's only cause of action, and the only one on which it based its suit, and it was not compelled to wait until August 1, 1889, to see whether the county court would pay, without being under any legal obligation to do so; and, if the bank saw fit to do so, it did not change the time when the law says the right of action arose on the assignment of an illegal and invalid instrument, which at no time could be collected by a suit, but, if paid at all at any future time, it would be matter of favor, and not of legal right, or in discharge of any legal obligation. Can there be any question that the assignee then had the right to bring such a suit to recover back the money paid? If so, the statute then commenced to run, and, having commenced, there was nothing to stop or suspend its running. *Handy* v. *Smith*, 30 W. Va. 195 (3 S. E. Rep.

604).   As to the assignee  being remote from the county of
Roane, it does not pretend that there was any fraud.  There
could be no concealment of the main fact.   Parties can not
thus, by their seclusion from the means of information,
claim exemption from the laws which control human af-
fairs, and set up a right to open up - all the transactions of
the past.   Case of Broderick's Will, 21 Wall. 503, 519.

This case does not impress me as a hard one on the as-
signee, quite apart from the statute of limitations; and upon
an equitable view of the case, such as may properly be taken
in this equitable action, I think the court was right in say-
ing that the law of the case upon the facts proved was for
the defendant.   I can not but think that if the defendant
had kept the order, or it had been returned to him in 1890 or
1891, he would have got the money.   He would have used
ordinary diligence to collect it, and it would have been paid
long before the 9th day of February, 1894, and there would
have been no occasion for the order of the county court
entered on that day.   The evidence tends to show the as-
signee's neglect to obtain such voluntary payment when it
was in its power to do so.   It was not until February or
March, 1894, that defendant was informed that the order
had not been paid, and payment thereof demanded of him ;
and up to that time he had never seen it or heard a word
about it.   What has the assignee, the bank, to say upon this
subject—as to the diligence used to collect this order?
Some time in the latter part of 1893 or first of 1894, it was
sent to the cashier of the Bank of Spencer, Roane county,
who replied by letter : "You may look for the payment of it."
"The sheriff says he will pay it."   If there was any other
effort at any other time to collect it, or to return it to the
assignor and let him collect it, evidence of such fact no-
where appears.

As a matter of fact, the claim was lost by the negligence
of the assignee, and it is not against conscience that it should
be the one to lose.   It now says that it was not bound to take
any legal steps, because, the order being invalid, such suit
would have been unavailing.   Granting that, why did it not
make a return, or a timely offer to return, the order to the
assignor?  See *Drane* v. *Scholfield*, 6 Leigh, 386, 394 ; *Wilson*

v. *Barclay*, 22 Gratt. 534.  It did neither during these five years and five months, but during the latter part of this period – say the beginning of the year 1894—wrote to the cashier of the Spencer bank to see the sheriff about it.

As a matter of law, the claim sued on is barred by the statute of limitations.  In equity and good conscience it is barred because, as a matter of fact, it has been lost by the negligence of the assignee.

Judgment affirmed.