## PICKETT v. AGLINSKY.
### No. 4580.

Circuit Court of Appeals, Fourth Circuit.
March 11, 1940.

J. Campbell Palmer, III, of Wheeling, W. Va. (Erskine, Palmer & Curl, of Wheeling, W. Va., on the brief), for appellant.

Jacob S. Hyer, of Elkins, W. Va. (Milford L. Gibson, of Elkins, W. Va., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment for plaintiff in a malpractice suit. There is evidence tending to show that the defendant physician negligently failed to remove a gauze or sponge which had been inserted in plaintiff's arm in the course of an operation, and that plaintiff sustained damage as a result thereof. A number of questions are raised by the appeal; but, in the view which we take of the case, the only one which we need consider is that relating to the refusal of the court to direct a verdict for defendant on the ground that the action was barred by the statute of limitations.

There is evidence from which the jury would have been justified in finding that defendant sewed up the sponge in plaintiff's arm in the course of an operation performed in December, 1934. There is no evidence, however, that defendant had knowledge of the fact, or that he intentionally did anything to deceive plaintiff with regard thereto or anything to prevent plaintiff's instituting action against him. The sponge was not discovered until an operation was performed on plaintiff's arm October 19, 1937. Defendant ceased treating plaintiff March 1, 1935, and never examined him thereafter except once in June, 1937. The action was instituted October 10, 1938, more than a year after that date. Viewed in the light most favorable to plaintiff, the evidence presents a case where plaintiff suffered injury as the result of defendant's negligence but failed to institute suit as the result of failure to discover the negligence until more than one year had elapsed after the act of negligence and after his last examination by defendant.

As the action is a personal one which does not survive, it is barred by the lapse of one year, the statute applicable, Code of West Virginia of 1937, Sec. 5404, being as follows: "Every personal action for which no limitation is otherwise prescribed shall be brought five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that, in case a party die, it can be brought by or against his representative; and if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued, and not after."

The decisions of West Virginia must be followed in the interpretation of this statute; and there can be no question but that, under those decisions, the period of limitation runs from the time when the wrong is committed and the cause of action accrues, and not from plaintiff's discovery of it. Scott v. Rinehart & Dennis Co., 116 W.Va. 319, 180 S.E. 276; Boyd v. Beebe 64 W.Va. 216, 61 S.E. 304, 17 L.R.A.,N.S., 660; Merchants' Nat. Bank v. Spates, 41 W.Va. 27, 23 S.E. 681, 56 Am.St.Rep. 828; Harper v. Harper, 4 Cir., 252 F. 39. In the Rinehart & Dennis case, involving suit for damages as a result of contracting silicosis, which plaintiff did not discover until after the period of the statute had run, the court said:

"The period within which actions of this character must be brought is 'one year next after the right to bring the same shall have accrued, and not after.' Code 1931, 55-2-12. Curry v. Mannington, 23 W.Va. 14; Kuhn v. Brownfield, 34 W.Va. 252, 12 S.E. 519, 11 L.R.A. 700. This statute has come to us from the mother state, being in the Revised Code of Virginia of 1819, chapter 128, section 4, and the Virginia Codes of 1849 and 1860, chapter 149, § 11. The language of the statute has varied slightly since 1819, but not its meaning. Both the Virginia and the West Virginia courts of last resort have consistently held that the right of action accrues when the wrong is committed, and in the absence of some act of concealment by the wrongdoer, the mere ignorance of the injured party of the actionable wrong will not suspend the statute. [Citing cases].

"This construction of like statutes was so general in the states as early as 1830 that the Supreme Court of the United States then said: 'We hardly feel at liberty to treat (it) as an open question.' Wilcox v. Plummer, 4 Pet. 172, 181, 7 L.Ed. 821. In 1841, after explaining that the statute of limitations must naturally receive a strict construction in a court of law, and that the court could introduce no

exception to the statute which the Legislature had not authorized, the Supreme Court of Ohio said: ' 'The true inquiry, therefore, at law, is, when did the cause of action arise, and not when did knowledge of that fact come to the plaintiff.' The opinion further said that though this construction had been sometimes questioned, the court was 'not aware that it has ever been shaken.' Fee v. Fee, 10 Ohio 469, 36 Am.Dec. 103, 106, 107. This construction was still unshaken in 1904, the Supreme Court of Georgia stating it was 'one of general recognition.' Davis v. Boyett, 120 Ga. 649, 48 S.E. 185, 186, 66 L.R.A. 258, 102 Am.St.Rep. 118, 120, 1 Ann.Cas. 386 (citing numerous authorities). This construction is yet unchanged. Wood on Limitations (4th Ed.) § 276c(1); 37 C.J., subject, Limitation of Actions, § 248; 17 R.C.L., Id., §§ 129 and 130; R. C.L., Permanent Supplement, pp. 4345, 4346; Annotation (1931) 74 A.L.R. 1318, etc."

The rule, applicable· generally to the running of the statute in cases where damages due to negligent acts are not discovered or do not occur until after the period of the statute has run, was well stated by Mr. Justice Lurton, then a Circuit Judge, speaking for the Circuit Court of Appeals of the Sixth Circuit, in the case of Aachen & Munich Fire Ins. Co. v. Morton, 6 Cir., 156 F. 654, 657, 15 L.R.A.,N. S., 156, 165, 13 Ann.Cas. 692, as follows: "If an act occur, whether it be a breach of contract or duty which one owes another or the happening of a wrong, whether willful or negligent, by which one sustains an injury, however slight, for which the law gives a remedy, that starts the statute. That nominal damages would be recoverable for the breach or for the wrong is enough. The fact that the actual or substantial damages were not discovered or did not occur until later is of no consequence. The act itself, which is the ground of action, cannot be legally separated from its consequences. Were this so, successive actions might be brought in many cases of contract and tort· as the damages developed, although all the consequential injuries had one common root in the single original breach or wrong. This would in effect nullify the statute."

This rule is generally followed in applying statutes of limitations to actions for malpractice of physicians and surgeons. Fadden v. Satterlee, C.C., 43 F. 568; Hahn v. Claybrook, 130 Md. 179, 100 A. 83, L.R.A. 1917C, 1169, and note; Capucci v. Barone, 266 Mass. 578, 165 N.E. 653. A modification of the rule is recognized in some jurisdictions, however, to the effect that the treatment by the physician or surgeon should be considered as a whole, and that the statute does not begin to run until the treatment is ended. Schmit v. Esser 183 Minn. 354, 236 N.W. 622, 74 A.L.R. 1312 and note. But this modification could not help plaintiff here for the reason that his action was not instituted until much more than a year had elapsed after his last treatment by defendant.

■ And the general rule is that the mere fact that plaintiff was not advised as to his injuries or the existence of his cause of action is immaterial. This has been held with respect to X-ray burns (Ogg v. Robb 181 Iowa 145, 162 N.W. 217, L.R.A.1918C, 981); sponge left in incision, the case here, (Capucci v. Barone, 266 Mass. 578, 165 N.E. 653); and forceps left in abdominal cavity after operation. Conklin v. Draper 229 App.Div. 227, 241 N.Y.S. 529, affirmed, 254 N.Y. 620, 173 N.E. 829. This holding is in line with those to the effect that statutes of limitations protect attorneys against suits for breach of professional duty notwithstanding the ignorance of their clients as to the facts out of which liability arises (Cornell v. Edsen 78 Wash. 662, 139 P. 602, 51 L.R.A.,N.S., 279), and with those applying the same rule to the protection of abstractors. See note 15 L.R.A.,N.S., at pages 160, 161, and cases there cited.

■■ Plaintiff relies upon section 5409 of the West Virginia Code of 1937, which tolls the running of the statute in favor of any one who shall "by absconding or concealing himself, or by any other indirect ways or means, obstruct the prosecution of such right." He argues that the sewing up of the sponge in his arm so that he could not know of its existence amounted to an obstruction of his right of suit within the meaning of this provision. It is expressly held in West Virginia, however, that, to render this provision of the statute applicable, there must be some positive, affirmative action on the part of the defendant "designed to conceal the existence of liability, and operate in some way upon the plaintiff, and prevent or delay suit for it." Thompson v. Whitaker Co., 41 W.Va. 574, 23 S.E. 795, syllabus 8; Boyd v. Beebe, supra, 64 W.Va. 216, 220, 61 S.E. 304, 17 L.R.A.,N. S., 660. It cannot be said that there was

evidence here of any action on the part of the defendant designed to conceal the existence of liability or to prevent or delay suit. The action of defendant in sewing up the incision in plaintiff's arm concealed the sponge, it is true, and prevented plaintiff's discovering that it had been left in the wound; but this was the negligent action relied upon as giving rise to the liability. It was in no sense an act designed or intended to conceal liability or to prevent or delay suit.

■ The provision in question is identical with one contained in Section 5825 of the Virginia Code; and the decisions of the Virginia Supreme Court of Appeals construing that provision are entitled to great weight, particularly in view of the similarity of the legal systems of the two states and the great respect which they accord the decisions of each other. Such a decision is Culpeper National Bank v. Tidewater Improvement Co., 119 Va. 73, 89 S.E. 118, 121, which is directly in point here. That was an action against a bank for failure to place the proceeds of a note which it had discounted to the credit of the maker. One of the questions involved was whether the running of the statute in favor of the bank was tolled by the provision in question, in view of plaintiff's ignorance of the fact that the proceeds of the note had not been properly credited. An instruction asked and given permitted the jury to consider the improper crediting of the proceeds without the knowledge of plaintiff as an obstructing of suit within the meaning of the provision. The court held this to be error, saying that to make the provision applicable there must have been some fraudulent act participated in by the bank which kept the plaintiff in ignorance of its rights, and quoted with approval the statement in Wood v. Carpenter, 101 U.S. 135 at page 143, 25 L.Ed. 807, to the effect that "concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and to prevent inquiry." The court also cited with approval the rule from 2 Wood on Limitations (4th Ed.) 1422. The decision is so conclusive of the question before us that we quote at length from the opinion of the court as delivered by Presiding Judge Keith. He said:

"The instruction under consideration tells the jury that if they believe that the plaintiff was kept in ignorance of its rights by the dealings of Smith with the Tidewater Improvement Company, then the statute of limitations did not begin to run against the plaintiff until the time the true state of facts was discovered. According to that instruction, the dealings between Smith and the bank may have been never so innocent, and yet they might, without any design upon their part, have tended to keep the plaintiff in ignorance of its rights. In order to produce that result we are of opinion that it must appear that there was some fraudulent act participated in by the bank which kept the plaintiff in ignorance of its rights.

"In Foster v. Rison, 17 Grat. (58. Va.) 321, it is said: 'The mere fact that Marsten Foster was ignorant of the existence of any debt which may have been due to him by J. W. Foster until within five years before the institution of the suit will not be sufficient to repel the bar of the statute. To have that effect, such ignorance must proceed from the fraud of J. W. Foster, which ought to be plainly charged by the pleadings, and clearly shown by the proofs.' Bickle v. Chrisman's Adm'x, 76 Va. 678.

"In Wood v. Carpenter, 101 U.S. [135], 143, 25 L.Ed. 807, the court says: 'Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and to prevent inquiry.'

"In 2 Wood on Limitations (4th Ed.) p. 1422, it is said: 'Mere silence by the person liable is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action. Concealment of a cause of action preventing the running of limitations must consist of some trick or artifice preventing inquiry, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence, and mere silence is insufficient. There must be something actually said or done which is directly intended to prevent discovery. Mere silence or concealment by a debtor may not, without affirmative misrepresentation, toll the running of the statute. Where, however, a debtor by actual fraud keeps his creditor in ignorance of the cause of action, the statute does not begin to run until the creditor had knowledge, or was put upon inquiry with means of knowledge, that such cause of action had accrued. Fraudulent concealment must consist of affirmative acts of misrepresentation; mere silence being insufficient. The fraud which will relieve the bar of the statute must be of that character which involves moral

turpitude, and must have the effect of debarring or deterring the plaintiff from his action.' "

The Virginia and West Virginia decisions construing the above provisions are in accord with decisions in other states, to which we have adverted, holding that the running of the statute of limitations in malpractice cases is not affected by the ignorance of plaintiff as to negligence occurring in the course of an operation, in the absence of fraud or an affirmative act on the part of defendant intended to conceal what has taken place. Capucci v. Barone, supra, 266 Mass. 578, 165 N.E. 653; Conklin v. Draper, supra, 229 App.Div. 227, 241 N.Y.S. 529, affirmed, 254 N.Y. 620, 173 N.E. 892; Ogg v. Robb, 181 Iowa 145, 162 N.W. 217, L.R.A.1918C, 981. See, also, Brown v. Grinstead, 212 Mo.App. 533, 252 S.W. 973, and Boden v. Austin, 156 Tenn. 366, 2 S.W. 2d 104. Brown v. Grinstead, supra, was a case in which the negligence consisted of leaving a gauze sponge in an abdominal wound; and the court held that the bare fact of leaving the sponge in the wound, without any act, affirmative or otherwise, to conceal what had taken place, could not be considered a fraudulent concealment. The court said [212 Mo.App. 533, 252 S.W. 974]: "There is no contention that defendant did anything affirmatively or otherwise to conceal the fact that a gauze sponge was left in plaintiff's abdominal cavity. Defendant did not know that the gauze sponge was left; hence he could not conceal such fact." That is precisely the situation here.

It follows that verdict should have been directed for defendant and, this not having been done, his motion for judgment non obstante veredicto should have been granted. The judgment appealed from will accordingly be reversed, and the cause will be remanded with direction to enter judgment for the defendant.

We note that the defendant has printed as an appendix to his brief at least three times as much of the record below as there was any reason for printing. He has failed to print therein the charge of the judge to the jury, as required by our rules, with the result that the plaintiff has had to incur the expense of printing the charge in his appendix. Under these circumstances, we think that not more than one-fourth of the expense of printing defendant's appendix should be taxed in the costs against plaintiff. The rules with respect to printing are of importance to the court as well as to parties litigant, being designed to save labor on the part of the court as well as expense to the parties. They permit the printing, in the appendix to the brief, of such parts of the record as it is desired that the court read; but we expect counsel to print under this provision only such parts of the testimony as is necessary to present the points raised by the appeal. Colloquies of counsel, discussions back and forth from the bench, irrelevant testimony, testimony or rulings as to matters not presented by the appeal, etc., should not be printed unless unusual circumstances give them an importance which they do not ordinarily possess. Counsel should remember that the entire record is before the court in typewritten form; and they should print only such parts of it as are important in view of the questions to be decided, omitting all immaterial or redundant matter.

Reversed.