## MUTUAL LIFE INS. CO. OF NEW YORK v. BLODGETT.

### No. 4883.

Circuit Court of Appeals, Fourth Circuit.

Feb. 24, 1942.

James M. Guiher, of Clarksburg, W. Va. (Steptoe & Johnson, of Clarksburg, W. Va., and Louis W. Dawson, of New York City, on the brief), for appellant.

Kermit R. Mason and George R. Farmer, both of Morgantown, W. Va., for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment for plaintiff on a policy of insurance issued by the defendant company on the life of one Clifford N. Blodgett of Morgantown, West Virginia. Recovery was sought by his wife, the beneficiary under the policy, on the ground that he had been absent from home without having been heard of for more than seven years and was therefore presumed to be dead. Defendant contended that the circumstances surrounding insured's disappearance were such that the conclusion of death should not be drawn from his absence and the failure of his family to hear from him, and introduced evidence tending to show that he had been seen alive at Oroville. California, within the seven year period. The case was submitted to a jury; and from judgment on an adverse verdict the defendant has appealed, contending (1) that the court should have directed a verdict in its favor, and (2) that the court erred in its charge in confining the issue before the jury to whether the insured had been seen alive at Oroville within the seven year period. The rights of the parties are governed by

the law of West Virginia, which has a statute relating to the presumption as to death arising from seven years absence. That statute, W.Va.Code, Ch. 44, Art. 9, Sec. 1, is as follows:

"When a Person Presumed to Be Dead. —In case any person has been or shall be absent for seven or more successive years from the place of his last domicile within this State; or, having been a resident of this State, has heretofore gone from and has not returned to this State for seven or more successive years; or, being a resident of this State, shall hereafter go from and not return to this State for seven or more successive years; or, being a nonresident of this State and being entitled to, or having an interest in, property in the State, has been or shall be absent for seven or more successive years from the place of his last known domicile; and in any of the foregoing cases shall for such period of time have been, or shall be, unheard of by those who, had he been alive, would naturally have heard of him; such person shall, in any case where his death shall come in question, be presumed in law to be dead, in the absence of proof to the contrary, or unless proof be made that he was alive within that time."

The facts as developed by the testimony are as follows: Insured was a mining engineer who had spent much time in South America but had returned to Morgantown, West Virginia, in 1929, where he resided with his wife and two daughters. Shortly after his return he lost his savings through speculation in stocks and in 1930 went to Kentucky looking for work, which he failed to find. He returned home in July 1931 but left again in a short time looking for work and was never seen by his family or by any of his relatives thereafter. At that time he was forty-nine years of age and in good physical health although mentally despondent and depressed. Although he had correspond with members of his family regularly during prior absences, they had only three letters from him after his departure in 1931: one under date of October 24, 1931, from Ripley, New York, one under date of February 2, 1932, from Marshall, Illinois, and one in January 1933 from Los Banos, California. All of these show that insured was unable to find work, was walking and hitch-hiking about the country, was suffering much hardship and was greatly discouraged and mentally depressed. The letter from Marshall, Illinois, shows also an attitude of resentment towards what he intimates was the attitude of his wife and daughters toward him. In June 1933 one of his daughters received a letter from a person signing his name as A. J. Cavin, which bore the postmark of Oroville, California, and stated that the writer and insured had been together for nearly a year, but that insured had left two months before to go to Sacramento and had not been heard from since, and asked whether the family had any information as to where insured might be found. Four other letters were received from Cavin, from which it appears that Cavin had been on the lookout for insured and had taken a number of trips trying to find him, but had heard nothing of him. One of these letters refers to the fact that insured had talked much to Cavin about his wife and daughters. Insured's father, who lived at Littleton, W. Va., testified that he had heard nothing from insured since he left home in 1931.

Plaintiff made diligent inquiry of chiefs of police and others in localities where she thought her husband might be found, sending them descriptions and photographs of him, but without result. When she learned he was in California in 1933, she wrote to the chief of police at Los Banos, who was unable to locate insured but directed her to communicate with the State Division of Criminal Identification and Investigation at Sacramento. She did this and received no information but a promise that she would be informed if any information of the whereabouts of insured should be received. Nothing further was heard from this. As early as 1932, plaintiff communicated to defendant the fact of her husband's disappearance but continued to pay premiums on the policy until he was declared dead by the County Court of Monongalia County, West Virginia, in the year 1940.

In 1941 an investigator for defendant discovered two witnesses who testified that a Cliff Blodgett was registered at the West Virginia Inn, a tourist camp at Oroville, California, in December 1935. The proprietress of the camp, an elderly woman, testified that she registered upon her record the name of Cliff Blodgett, whom she was unable to identify other than that he was a tall, slim, smooth-faced man. Another woman, a waitress in a local restaurant, testified that she had occupied a room in a cabin, another room of which was occupied by the man giving his name

as Cliff Blodgett, that she had had several conversations with him, and that in the course of their conversations he told her that he was from West Virginia and had traveled in South America and showed her pictures of South American oil fields. She testified, also, that a picture of insured which was shown her looked like the man whom she had seen and talked to at the West Virginia Inn. Her testimony was weakened, however, by admissions that she had previously identified pictures of other persons as resembling the man registered at the camp, that in her description she failed to mention a noticeable scar in the left eyebrow of the insured, and that she described the man whom she saw as of neat appearance, whereas the appearance of insured had never fitted that description.

■ The motion for directed verdict was based upon two grounds: (1) that the evidence showed that the relationship between insured and his family was such that they would not "naturally have heard of him" and that consequently their failure to hear of him within the seven year period was without probative force under the statute; and (2) that the evidence conclusively established that insured was seen alive within the seven year period. Neither of these grounds can be sustained. There was evidence, as stated, not only that plaintiff and her daughters had not heard of insured after he left Oroville for Sacramento early in 1933, more than seven years before suit was instituted, but also that his father had not heard of him during this period; and the jury might well have concluded that, had he been alive, some of them would naturally have heard of him. He wrote to his wife and daughters three times after leaving home in 1931; and while the letter from Marshall, Illinois, in 1932, shows that he felt aggrieved at their attitude toward him, it appears that he wrote to them later from Los Banos, California, and one of the letters from Cavin states that insured talked much about them and shows that he must have had them in mind. It is hardly conceivable that, had he been alive, he would have let seven years pass without communicating with them in some way. Added to this is the fact that plaintiff from time to time during the seven year period actively sought information with regard to insured and that she enlisted the aid of the Division of Criminal Identification and Investigation of the State of California without result. The testimony of the two witnesses as to the presence at Oroville, California, in 1935, of the man giving his name as Cliff Blodgett and answering generally to the description of the insured raises a question for the consideration of the jury; but we cannot say that it is so conclusive as to justify the direction of a verdict for the defendant. Not only was the question of the credibility of these witnesses for the jury, but so also was the question as to the identity of the man whom they described.

■ We think, however, that the learned trial judge erred in his charge in restricting the consideration of the jury to the question as to whether the insured was seen in Oroville, California, in 1935. As there was proof from which an inference contrary to the inference of death ordinarily arising from unexplained absence of seven years could have been drawn, as well as affirmative proof tending to show that insured was seen alive within that period, the jury should have been allowed to weigh all the circumstances in evidence, including the natural inference to be drawn from the fact that his immediate family had not heard of him for more than seven years, and to say in the light of all the evidence whether his death had been established, the burden being upon plaintiff to establish it. Instead of this, the jury were given the following instruction, to which the defendant excepted, viz.:

"The simple question of fact that you must decide is, Do you believe from a preponderance of the evidence introduced as hereinbefore defined, including in your consideration the depositions taken upon behalf of the defendants and read to you, that the person who occupied cabin No. 2½ at the West Virginia Inn, in Oroville, California, was Clifford Nelson Blodgett, the husband of the plaintiff, Pearl Blodgett.

"In other words, if you believe from a preponderance of the evidence that the man who occupied cabin No. 2½ at the West Virginia Inn, at Oroville, California, in December 1935, was the husband of this plaintiff, then he has been seen alive within seven years, and the plaintiff cannot recover. If, however, you do not believe that the man so occupying cabin No. 2½ at the West Virginia Inn, at Oroville, California, was the husband of this plaintiff, then there is no evidence that he has been

seen alive within seven years, and you must return a verdict for the plaintiff."

As we pointed out in Stump v. New York Life Ins. Co., 4 Cir., 114 F.2d 214, the West Virginia statute above quoted raises a rebuttable presumption of law. The person who has been absent and unheard of for seven years by those who would naturally have heard of him if he had been alive is "presumed in law to be dead, in the absence of proof to the contrary, or unless proof be made that he was alive within that time." Where there is such proof, as there is here, the presumption of law disappears and the question is one for the triers of fact upon all the evidence, giving due weight to the inference of death reasonably deducible from seven years absence without being heard of. It is true, of course, that the evidence chiefly relied on by the defendant was the evidence as to the insured's being seen in Oroville, California, in 1935, but defendant also relied on circumstances which showed, so it contended, that the members of insured's family would not naturally have heard of him if he had been alive; and it was error to exclude this aspect of the case from the consideration of the jury.

There is nothing in the Stump case to the contrary. That case was heard by the judge below without a jury and was reviewed by this court on the facts as well as on the law. Our conclusion was that the court below had erred in holding that, under the circumstances there, the mere fact that insured was a fugitive from justice was sufficient to overcome the presumption of death arising from seven years absence without being heard of. That decision, consequently, throws little light on the scope of the issues to be submitted to the jury in a case such as this. More nearly in point is our decision in Metropolitan Life Ins. Co. v. Goodwin, 4 Cir., 92 F.2d 274, 276, dealing with a very similar statute of the State of Virginia, wherein we said:

"When the presumption of death is sought to be rebutted by evidence as to the circumstances under which the missing man disappeared and under which no news has been heard of him, the question whether such evidence is sufficient to rebut the presumption of death prescribed by the statute is a question of fact for the jury."

The general nature of the statutory presumption with which we are dealing and the way in which it is to be applied is well stated in 1 Chamberlayne Modern Law of Evidence, sections 1085, 1089, quoted with approval by the Supreme Court of Appeals of Virginia in interpreting the statute of that state in Simpson v. Simpson, 162 Va. 621, 175 S.E. 320, 329, 94 A.L.R. 909, 920, and by this court in Metropolitan Life Ins. Co. v. Goodwin, supra, as follows:

"This statute prescribed a true rebuttable presumption of law as distinguished from a presumption of fact (which is in reality merely an inference of a fact from facts proven) and from an administrative assumption of fact. A rebuttable presumption of law is a provisional procedural assumption of a fact which is prescribed by a rule of the substantive law. It is a rule of the *substantive* law declaring that for *procedural* purposes a certain prima facie probative force will and *shall* (until evidence sufficient to prove the contrary is introduced) be *provisionally* attached to a given state of facts; that is, a certain inference *shall* be drawn from it, unless and until evidence sufficient to prove the contrary has been introduced. A party is as much entitled to a benefit of a presumption of law as he would be to have any other appropriate legal rule applied to the facts of his case; and, where the facts which are required to give rise to the presumption are proven, the presumption must be applied (the presumed fact must be assumed to have been proven) until evidence sufficient to overcome the presumption and prove the contrary shall have been introduced."

Very much in point on the general question is the decision in Equitable Life Assur. Soc. v. Sieg, 6 Cir., 53 F.2d 318, 320, in which the lower court was reversed for placing upon the defendant the burden of establishing facts to overcome the presumption of death arising upon plaintiff's proof of unexplained absence for a period of seven years. The court said:

"The charge as given wholly fails to recognize the fundamental difference between the presumption, as such, and the proof of those facts upon which the presumption is predicated. In the present case the presumption is that of death of the insured. It is created or arises only when an unexplained absence of seven years, without tidings, has been 'established.' This fact may be taken as established where it is conceded by the defendant, where no reasonable juror could con-

clude otherwise, or where the evidence offered by the plaintiff to sustain the contention is credited by the jury; but, clearly, the burden of proving such fundamental facts remains always with the party in whose favor the presumption operates. If substantial evidence be offered tending to rebut the facts upon which the presumption is founded, the issue 'is at large on the proofs,' and if the party in whose favor the presumption is claimed does not sustain the burden of proof resting upon him, to prove these facts by a preponderance of the evidence, the presumption is not overcome or rebutted—it simply has never been created. 。

\*     \*     \*     \*     \*

"But even if the facts upon which the presumption is founded were to be considered as fully established, and the defendants had then sought to rebut the fact presumed, we must seriously doubt whether this particular presumption is within any of the classes which can be regarded as affecting the burden of persuasion. It would seem more properly aligned with the purely procedural presumptions which disappear, as presumptions, when evidence is produced to refute them, although they may continue in the case as permissible inferences."

When the same case was before the court on a second appeal, 6 Cir., 74 F.2d 606, 607, the court made clear that the presumption of death from unexplained absence of seven years without tidings places upon the party against whom the presumption operates only the burden of going forward with evidence, leaving the burden of persuasion on the issue as to death with the plaintiff. The court said as to this:

"In a closely reasoned analysis of our former opinion appellants' counsel point out, we think correctly, that there are two distinct parts to every presumption of the nature here involved, the base and the presumption itself. The base must first be established. When and if it is the presumption is created or arises. A presumption is not evidentiary in nature; it never shifts the burden of persuasion; and, even if it be conceded that some presumptions do, the presumption of death places upon the party against whom it operates only the burden of going forward with the evidence."

While the Supreme Court of Appeals of West Virginia has not had occasion to pass upon the question under the statute here involved, it has recently adopted the rule above stated with respect to the very similar question arising in connection with the presumption against suicide. Lambert v. Metropolitan Life Ins. Co., 17 S.E.2d 628. And the weight of authority elsewhere is in accord. 16 Am.Jur. 23; note, 115 A.L.R. 404; 5 Wigmore Evidence, 2d ed. 452, 453; Fuller v. New York Life Ins. Co., 3 Cir., 199 F. 897; Shaw v. Prudential Ins. Co., 158 Wash. 43, 290 P. 694; Winter v. Supreme Lodge, 96 Mo. App. 1, 69 S.W. 662; Tyrrell v. Prudential Ins. Co., 109 Vt. 6, 192 A. 184, 192, 115 A.L.R. 392. In the case last cited it is said:

"A disputable presumption is a rule of law to be laid down by the court, which shifts to the party against whom it operates the burden of evidence, merely. It points out the party on whom lies the duty of going forward with evidence on the fact presumed. And when that party has produced evidence fairly and reasonably tending to show that the real fact is not as presumed, the office of the presumption is performed, and the fact in question is to be established by evidence as are other questions of fact, without aid from · the presumption, which has become functus officio. To translate this statement into the language of this court, all such presumptions are locative, merely. A presumption of itself alone, contributes no evidence and has no probative quality. It takes the place of evidence, temporarily, at least, but if and when enough rebutting evidence is admitted to make a question for the jury on the fact involved, the presumption disappears and goes for naught. In such a case, the presumption does not have to be overcome by evidence; once it is confronted by evidence of the character referred to, it immediately quits the arena."

As the case is to go back for a new trial, it may be helpful to summarize the rules applicable to the presumption arising under the statute. They are:

1. Where there is proof of absence of a person for seven years without his being heard of by those who naturally would have heard of him if alive, a presumption of death arises, in the absence of proof to the contrary or unless proof be made that he was alive within that time.

2. This presumption is rebuttable and may be rebutted by evidence which tends to explain, on a basis other than death, the absence of such person and lack of tidings

from him, or to show that he was alive within the statutory period.

3. Where there is proof in rebuttal of the presumption, the presumption, as such, disappears from the case, and the question is one for the jury upon the proofs and the inferences legitimately arising thereon, including the inference that a person is dead if he has been absent for seven years without being heard of by those who would naturally hear of him if alive, with the burden of persuasion on the issue resting upon the plaintiff.

For the reasons stated, the judgment appealed from will be reversed and the case will be remanded for a new trial in accordance with the principles herein laid down. Since the appellant has printed as an appendix to its brief practically all of the testimony, instead of selecting such portions thereof as it was necessary for the court to read for an understanding of the questions involved, the cost of printing the appendix will not be taxed in the costs. United States Galvanizing & Plating Equipment Corp. v. Hanson-Van Winkle-Munning Co., 4 Cir., 104 F.2d 856, 863; Pickett v. Aglinsky, 4 Cir., 110 F.2d 628, 632.

Reversed and remanded.