## CHARLESTON.

VIRGINIA M. HOGE, *Adm'x., Etc.* v. HAROLD M. WARD

(No. 6719)

Submitted October 7, 1930. Decided October 21, 1930.

516

 

*Beverley Broun, Alvin J. Barnhart* and *A. D. Duduit,* for plaintiff in error.

*Morton & Snyder,* for defendant in error.

MAXWELL, JUDGE:

October 25, 1919, Harold M. Ward and wife conveyed a lot to George F. and T. Boone Brown, who gave their three joint negotiable notes, payable to Ward for the deferred purchase price. All of these notes were secured by a vendor's lien reserved in the deed and recited on the face of the notes. July 21, 1920, the Browns conveyed this lot to M. E. Moore, Trustee, who assumed payment of the notes. January 3, 1922, after maturity of the second note, the one in controversy, the plaintiff's decedent, S. T. Hoge, came into possession of it. Whether Hoge purchased this note of Ward or whether Hoge accepted it as collateral security for a loan to Moore, is a question in controversy. Moore paid $1,000.00 thereon April 13, 1923. By deed dated April 16, 1923, but not recorded until April 26, 1923, Moore, Trustee, conveyed the lot to John C. Malone. April 20, 1923, Ward executed a release of the vendor's lien, reciting in the release the payment of all the notes.

In 1927, S. T. Hoge having departed this life, the plaintiff sued Ward on the theory that the transfer of the note to Hoge was by valid assignment of Ward, and that Ward in releasing the vendor's lien breached an implied warranty contained in said assignment. Judgment was rendered for the plaintiff, but on writ of error to this Court, *Hoge* v. *Ward,* 104 W. Va. 284, the judgment was set aside and the case remanded because of the insufficiency of the declaration. The conclusion of the Court was that the plaintiff had not shown that she had proceeded against the parties primarily liable on the note before instituting suit against the assignor without recourse for the recovery of damages for breach of an implied warranty.

In her amended declaration, plaintiff alleges the insolvency

of both M. E. Moore, Trustee, and George F. Brown, and that T. Boone Brown, now a resident of Pennsylvania, was proceeded against by plaintiff in a suit in that state, which suit resulted in a verdict and judgment for T. Boone Brown. On the trial upon the amended declaration, judgment was rendered for the defendant on the verdict of a jury in the common pleas court of Kanawha County. From an order of the circuit court affirming that judgment, plaintiff prosecutes this writ of error.

We shall consider first the ground of error mostly relied on by plaintiff, that is, the giving of defendant's second instruction. This instruction reads: "The Court further instructs the jury that if you believe from the evidence that M. E. Moore was being pressed for payment of the note introduced in evidence and that S. T. Hoge loaned to the said M. E. Moore the money with which to pay said note, and that said note was paid off by Moore with the money borrowed from Hoge, then you will find for the defendant." Plaintiff's contention is that whether there was an assignment by Ward to Hoge or whether there was a loan from Hoge to Moore, Ward would not be exempt from liability in either event. In considering this point of error, it is necessary to look closely to the facts and circumstances surrounding the transfer of the note.

January 3, 1922, Hoge, Moore and R. E. McCabe, Esquire, attorney for Ward, met in the office of McCabe to transact business relative to Moore's payment of the note. Hoge wrote a check to Ward for the full amount of the note and delivered it to McCabe who thereupon delivered to Hoge the note endorsed on the back as follows: "For value received, this note is assigned without recourse to S. T. Hoge this third day of Jany., 1922, H. M. Ward, by R. E. McCabe, Atty." Relative to this transaction Hoge (in a deposition taken to perpetuate his testimony) testified, in substance, that he purchased the note from Ward and looked to the vendor's lien for security, and that he had had the record examined to see if that lien existed. On cross-examination, he did say that he had loaned the money to Moore, but a consideration of his entire testimony indicates that the transaction as he saw it was an assignment by Ward to him of the note for face value then paid by

him to Ward, though he (Hoge) became involved in the transaction primarily for the purpose of helping his friend, Moore.

Moore testified, in substance, that he and Hoge had had business dealings together, and that he arranged with Hoge to take up the note in question, because Ward was threatening suit on the vendor's lien; that Hoge looked to him for the payment of the note, a part of which he paid; but that it was satisfactory with him (Moore) for the note to be secured by the vendor's lien.

Ward, who was not present at the meeting at McCabe's office, testified that McCabe had authority to handle this note for him as he saw fit. The plaintiff testified, without objection, that Hoge had loaned Moore the money, but that Hoge thought that the vendor's lien was security for the note and that, because of the lien, he did not anticipate any trouble collecting the note.

Whether Hoge made a loan to Moore or purchased the note directly of Ward, it is evident that Hoge looked to the vendor's lien as security for the debt. If the note was discharged and of no further consequence after Hoge's payment to Ward, there appears to be no logical reason for the action of Ward in assigning it to Hoge, regardless of what may have been the interpretation of the "without recourse" endorsement. It was incumbent upon Ward to consider thoroughly the position of Hoge before he (Ward) released the vendor's lien. Our conclusion, therefore, is that, even if it be considered that the transaction was a loan by Hoge to Moore, Ward is not relieved of liability in releasing the vendor's lien, for by so doing he impaired the security upon which that loan was based, and this with a full knowledge of all the facts. Defendant's instruction No. 2, therefore, is bad under any aspect of the case.

Now as to the fourth assignment of error, namely, the refusal of the trial court to give plaintiff's instruction No. 1-a. This instruction reads as follows: "The Court instructs the jury that the assignor of a note without recourse warrants the assignee (1) that the instrument is genuine and in all respects what it purports to be; (2) that he has a good title to it; (3) that all prior parties had capacity to contract; (4) that he has no knowledge of any fact which would impair the validity of

the instrument or render it valueless; (5) that he will do no act to prevent the assignee from collecting the note.'' It is the defendant's contention that inasmuch as section 65, chapter 98-a, Code, lays down the first four warranties, above quoted, as those which apply to every limited assignment of a negotiable instrument, it necessarily excludes any others. In any assignment there is of necessity always an implied warranty that the assignor will do nothing to impair the validity of that which has been assigned. Applying this principle to an assignment of a judgment, see *Findley* v. *Smith*, 42 W. Va. 29.

In Brannan's Negotiable Instruments Law, p. 609, is this statement: ''However, even without this linking of the two sections (meaning secs. 65 and 66 of Uniform Negotiable Instruments Law), sec. 65 should be construed to harmonize with the commercial law as to implied warranties in sales of chattels, since this section relates to the obligation of a seller of a negotiable instrument, which is in some respects a chattel.'' In *Watson* v. *Cheshire*, 18 Iowa 202, it was held that an assignor without recourse impliedly warrants that he has done nothing and will do nothing to prevent the assignee from collecting the instrument assigned. Although that case was decided before the Uniform Negotiable Instruments Law came into existence, the holding goes to a basic principle of fair dealing not supplanted by the negotiable instrument statute. To the same effect, see *Eaton* v. *Mellus*, 73 Mass. 566. It is only common sense that the law should raise and impose an implied warranty, attendant upon any assignment, that the assignor will not undermine or destroy that which he has assigned. We think the instruction correctly propounds the law and should have been given. Plaintiff's instruction No. 2, refused, would have told the jury that if they believed from the evidence that Hoge, immediately after discovering that the lien had been released, offered to return the note to Ward and demanded return of his money, it was not necessary for him thereafter to pursue his remedies against George F. Brown, T. Boone Brown and M. E. Moore, Trustee, as a condition precedent to bringing this suit. This instruction was properly refused, because the law of the case was laid down on the former writ

of error, *supra,* and it was there declared that the condition precedent to plaintiff's right to recover of Ward was the inability of plaintiff to collect of any of those primarily liable. The matter introduced in this instruction was not then before the court. It comes too late now. It has no proper place in the case.

It is argued on behalf of Ward that, inasmuch as an adverse judgment was rendered against plaintiff by a court of competent jurisdiction of the state of Pennsylvania in favor of T. Boone Brown, one of the original obligors on the note, plaintiff has no cause of action, and therefore has no right to complain of anything that has been done by Ward; that is, that the original obligor having been thus relieved from the debt, no secondary liability exists upon Ward. However this might be, if T. Boone Brown were the sole original obligor (a legal question which we are not attempting to discuss) it is evident that the point is not well taken, because T. Boone Brown was not a sole original obligor. George F. Brown was also an original obligor, and it cannot, with reason, be said that because his co-obligor was relieved by a Pennsylvania court from liability on the note that he also would be relieved by the same or any other court of competent jurisdiction. And in the absence of an adjudication relieving him, the fact of his primary obligation stands, likewise the secondary liability of Ward. While the bankruptcy of George F. Brown relieves him from having to discharge the debt, it is in no sense an adjudication that he was not originally and primarily liable thereon. And this reasoning applies to the secondary liability of Ward whether we consider that Hoge purchased the note of Ward at face or whether he paid the money to Ward for Moore. In either event, Ward, by making formal assignment of the note to Hoge, put him in position to look to the security of the note as a protection of his debt.

During the trial, evidence was introduced by the plaintiff showing attorneys' fees, expenses and costs of the suit prosecuted in Pennsylvania by plaintiff against T. Boone Brown, one of the original obligors on the note. This evidence was objected to by defendant, and the objection sustained by the

trial court on the ground that such costs were not a proper part of the damages. An investigation of the authorities indicates the contrary. In an action of assumpsit against an assignor for breach of an implied warranty attendant upon the assignment without recourse of a promissory note, the assignee is entitled to prove, as an element of damages, reasonable expenses and attorney's fees and court costs. ''The measure of the assignee's damages for breach of warranty of title and validity of the chose assigned is, generally, the amount he paid the assignor for the chose, with interest, and costs reasonably incurred by him in an attempt to enforce the chose against the debtor.'' 5 C. J., p. 971. See likewise Sutherland on Damages, Vol. 2, (4th Ed.), page 2382. ''The assignor of a note is liable to the assignee for the costs of the suit prosecuted against the maker of the note.'' *Hammett* v. *Smith,* 5 Ala. 156. To like effect see *Daskman* v. *Ullman,* (Wis.) 43 N. W. 321; *Butler* v. *Suddeth,* (Ky.) 6 Moro's Repts. 541; *Phoenix Ins. Co.* v. *Parsons,* (N. Y.) 29 N. E. 87.

It is said on behalf of Ward that it was not Ward's release which destroyed the protection of the lien, as claimed by Hoge, but that the protection of that lien, in so far as Hoge is concerned, was destroyed by statute, Acts 1921, chapter 61, which provided, in effect, that an unrecorded assignment of a lien or of a note secured thereby should be void as to creditors and subsequent purchasers without notice. True, but the record shows that the innocent purchaser, Malone, did not come into the matter until after the release of the lien by Ward; in fact that Malone held off until the lien had been released. Thus, if there had been no release by Ward, there would have been no innocent purchaser, at least, not Malone. So that Hoge's inability to enjoy the benefit of the lien must be charged primarily to Ward's unauthorized release and not to the statute.

One other point remains. Defendant would have us consider the release of the lien as the wrong complained of, treat it as a tort, and hold that inasmuch as he (Ward) derived no personal benefit from the said tortious act, the plaintiff cannot waive the tort and sue in assumpsit. An insuperable difficulty with that proposition is that the wrongful release is

not in fact the thing of which complaint is made, nor is it the thing which affords basis for the action. The cause of action is the breach of the implied warranty attending the qualified assignment of the note. The wrongful release is merely the evidence of the breach. An implied warranty is an implied contract. That assumpsit is the proper remedy for breach of an implied contract is so fundamental that citation of authority is needless.

In the light of the foregoing, we reverse the judgment, set aside the verdict, and remand the case for a new trial.

*Reversed and remanded.*