Robert E. **HOWARD**, Maxine Howard and Robert Douglas Howard, an infant, who sues by Robert E. Howard, his father and next friend, Plaintiffs,

v.

**UNITED FUEL GAS COMPANY**, a corporation, Amere Gas Utilities Company, a corporation, Bernard T. Johnson and Eva Susan Johnson, Defendants.

No. 846.

United States District Court
S. D. West Virginia,
Bluefield Division.

Dec. 9, 1965.

Wade H. Ballard, III, Peterstown, W. Va., Fred O. Blue, Kwass, Stone & Blue, Bluefield, W. Va., on brief, for plaintiffs.

H. L. Snyder, W. Hale Watkins, Charleston, W. Va., for defendants United Fuel Gas Co. and Amere Gas Utilities Co.

John L. Detch, Lewisburg, W. Va., for defendants Bernard T. & Eva Susan Johnson.

CHRISTIE, District Judge:

This being a diversity action, jurisdiction is bestowed on this court by 28 U.S. C.A. § 1332. Plaintiffs in their complaint seek to recover for personal injury and property damages against the defendants resulting from a gas explosion at their home on February 23, 1963. The gas line was in the home when plaintiffs, Robert E. and Maxine Howard, acquired it by purchase in 1955. It appears to have been installed for a previous owner, defendants, Bernard T. and Eva Susan Johnson, about the year 1953. Plaintiffs ask recovery against defendants on the theories of (a) negligence (*ex delicto*), and (b) breach of implied warranty (*ex contractu*), in that, as they allege, the gas pipings were unfit for their intended use and were so improperly installed as to permit gas to escape, eventually becoming ignited and thus exploding. Defendants in their answer have raised numerous affirmative defenses. In an effort to simplify the issues involved, the Court, by agreement of counsel, will limit its decision at this time to the narrow issue of whether the Statute of Limitations, pleaded by all the defendants, bars the adult plaintiffs' right to a recovery. The defendants concede the statute has not run against the infant plaintiff on either theory.

This case being a diversity action with no federal question involved, state law applies. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Pickett v. Aglinsky, 110 F.2d 628 (4th Cir. 1940).

The plea as it pertains to the negligence theory will be discussed first.

The West Virginia Statute of Limitations applicable to an action for negligence sounding in tort is as follows:

"Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; * * *." Code, 55-2-12.

It is to be noted that this statute does not destroy the *cause of action* itself, but it only takes away the *right of action—* the right to sue if not exercised within a given time. It is well to keep this distinction in mind. This is consonant with the general rule relating to statutes of limitation, i. e., that it is not their purpose to affect substantive rights, but only the right to maintain suits or actions thereon. Their historical purposes are so elemental as to call for no elaboration here. We are only concerned with their proper application under the facts and circumstances of this case.

In West Virginia, the suing out of the summons is the commencement of the action for the purpose of applying the statute of limitations. Glenn Coal Co. v. Dickinson Fuel Co. et al., 72 F.2d 885 (4th Cir. 1934). In this case the record shows that the summonses were sued out on September 8, 1964. Plaintiffs contend that the right to bring this action first accrued to them following the explosion on February 23, 1963, thus coming within the requirements of the statute. Defendants, however, argue that such right accrued between 1953 and 1955, when the defective natural gas piping was installed, which would be an eight to ten year time lapse before the action was brought, and thus clearly making such action barred. The Court would point out the statute itself does not expressly provide that the period of limitation shall commence to run from the time the tort or wrong is committed; nor does it expressly provide that the period of limitation shall commence to run from the time the wronged plaintiff discovers, or, in exercise of reasonable care, should have discovered, that the tort or wrong has been committed by the defendant with a consequent damage to the plaintiff. Cf. Morgan v. Grace Hospital, Inc., 144 S.E.2d 156 (W.Va.1965). Thus, to properly decide the issue before us, we must look to the construction placed on this statute by the West Virginia court.

After careful consideration of the ably-prepared briefs by both sides, we must hold that plaintiffs' right of action did not accrue until the gas explosion in 1963 and that it is, therefore, not barred by the statute of limitations. This holding is predicated upon the general rule that a statute of limitations begins to run from the date of the injury, because it is only then that the aggrieved party has a right of action. Boyd v. Beebe, 64 W.Va. 216, 61 S.E. 304 (1908); State ex rel. Ashworth v. State Road Commission, 147 W.Va. 430, 128 S.E.2d 471 (1962).

The West Virginia Supreme Court has by judicial construction given various interpretations, depending on the facts of each individual case, to the statute. In particular, the court in the area of subterranean trespass, has held that the statute begins to run only from the time of actual discovery of the trespass, or from the time when such discovery was reasonably possible. Western Pocahontas Corp. v. Eastern Gas & Fuel Associates, 213 F. Supp. 657 (S.D.W.Va.1963); Petrelli v. West Virginia-Pittsburgh Coal Co., 86 W.Va. 607, 104 S.E. 103 (1920). As stated in the syllabus of the Petrelli case,

"Where a cause of action accrues for the unlawful removal of coal by

wrongfully extending mining operations into adjoining property, the statute of limitations begins to run only from the time of actual discovery of the trespass, or the time when discovery was reasonably possible."

In the area of medical malpractice suits, the general rule has been that the cause of action, if any, against the surgeon accrues at the time of the negligent operation and that in the absence of actual knowledge, fraud or concealment on the part of the surgeon, the running of the statute is not delayed or tolled. Gray v. Wright, 142 W.Va. 490, 96 S.E.2d 671 (1957). See also Baker v. Hendrix, 126 W.Va. 37, 27 S.E.2d 275 (1943). The West Virginia court, however, in Morgan v. Grace Hospital, Inc., supra, recognized a variance in this rule from that set forth in the subterranean cases and thus held that the period of the applicable statute of limitations did not necessarily commence to run against the plaintiff's cause of action at the time of the operation, but rather that it only commenced when the patient learned of, or by exercise of reasonable diligence should have learned of, the negligent act—leaving a sponge in the patient's abdomen. Thus, to that extent the court expressly disapproved of the Gray and Baker cases.

There are still other cases—the so called "continuing injury cases"—which have made their way into West Virginia law, and we believe they are controlling here. The general rule as to them is stated in 34 Am.Jur., Limitation of Actions, Section 115 (1941), thusly,

" * * * (I)t is well settled that where an act is not necessarily injurious or is not an invasion of the rights of another, and the act itself affords no cause of action, the statute of limitations begins to run against an action for consequential injuries resulting therefrom only from the time the actual damage ensues. A statute of limitations does not begin to run as to a continuing injury until the damages in suit are sustained. These rules find special application in actions for injuries to

real property and in tort actions generally, for injuries to persons or property."

The West Virginia court adhered to these principles in the cases of Day v. Louisville Coal & Coke Co., 60 W.Va. 27, 53 S.E. 776 (1906); and Henry v. Ohio River R. Co., 40 W.Va. 234, 21 S.E. 863 (1895). In the Henry case, defendant built an embankment alongside its railroad tracks across the street from plaintiff's property. Running beside the street was a drain or culvert used to carry off water accumulating on the street from rain or snow. Because the defendant's embankment was so carelessly and negligently constructed, the water could not pass down through the culvert, thus causing the water to gather on the street and overflow onto plaintiff's land damaging it and his home. A primary issue in the case was whether the statute of limitations began to run from the making of the embankment or from each overflow. Judge Brannon, writing the opinion for the court, stated,

"The statute begins to run from the time the cause of action accrues. But when did that accrue in this case? The act of the defendant was the building of the embankment, but that, in itself, alone did not harm the plaintiff. He could not sue for that, as no harm as yet was done his property. Later on damage is done him by overflow. The water is the immediate agent doing the injury. We seek the cause of its presence, and find the embankment is the cause of its presence. The overflow is consequential from the embankment. Never till this overflow did the plaintiff have right to sue. Had he sued at once on the making of the road, what would have been the basis of damage? The building of the embankment was the remote or primal cause,—the causa causans,—in the line or process of the production of the injury; but the overflow consequent upon it is the direct cause of harm,—the gravamen of the action.

If one put a log in the road, no individual can sue for that only; but if he fall over it he may sue, and the statute runs from the fall. There must be a wrong and some loss to warrant an action. The action accrues when the damage is sustained by the plaintiff, not when the causes are first set in motion ultimately producing the injury as a consequence."

In the Day case, supra, the Court held that the cause of action to an owner of land damaged by depositing of refuse material on it, put into a stream by a person mining coal and making coke, and thence carried by its waters and deposited on the land, first accrues when the material is deposited upon the land, and the statute of limitations does not begin to run against such action until then.

The case at bar, we think, falls into this latter category. Plaintiffs clearly had no right of action against the defendants due to the mere installation of the natural gas pipes in 1953 or in 1955 when they purchased the property, as there was then no injury suffered by them and no basis for a suit for damages. The subsequent ignition of the escaping gas in 1963 was the actual cause of action and the time of the injuries. No injuries or damages were sustained by the plaintiffs until then. Thus, it is apparent that their right to bring action did not arise until then.

In the Morgan case, supra, the Court stated that the "discovery rule," as enunciated in the Petrelli case, was merely extended to an action where a plaintiff alleges injuries from the effects of a foreign object negligently left in his or her body following a surgical operation. It only held that the statute did not begin to run until plaintiff learned, or should have learned, of the injury. It went no further. Obviously, the case at bar does not involve medical malpractice or subterranean trespass. Nor does it involve hidden injuries or damages. Thus, we are not concerned in this case with the discovery rule, because here there was no injury or damage to discover prior to

the explosion in 1963. Its significance only becomes manifest when there is antecedent negligence causing concurrent injury or damage not readily discernible and requiring the exercise of due diligence to discover. It should be further noted that in the Baker, Gray and Morgan decisions, supra, the injuries and resultant damages were concurrent with the negligent acts; while here there is a gap of some eight or ten years between the time of the alleged negligence and its ultimate consequences. Here, there was no injury or damage inflicted at the time of the commission of defendants' alleged negligent act, nor did any occur within two years thereafter, which the plaintiffs could have made the subject of suit for damages, and the exercise of the utmost diligence on their part would have availed them naught. There was no actionable wrong then existing giving them a right of action for damages that they could have learned about. True, the gas was then apparently escaping, but so was the water overflowing in the Henry case.

We, therefore, hold that, based on the Henry and Day decisions, as to the tort aspect of this case, a right of action therefor did not accrue until damages were sustained, and since there was neither injury nor damage until the gas was ignited and exploded in 1963, the plaintiffs did not have a right of action before that time and their claim for negligence is not barred.

The remaining issue to be decided is whether plaintiffs' alleged complaint of breach of implied warranty of fitness of the natural gas piping was barred by the five year statute of limitation for actions based on implied contract. The pertinent provisions of the statute are as follows:

"Every action to recover money * * * shall be brought within the following number of years next after the right to bring the same shall have accrued * * * if it be upon any other contract, express or implied, within five years * * *." Code, 55–2–6.

 We would first say that it is well settled principle of law that an implied warranty is an implied contract. Hoge v. Ward, 109 W.Va. 515, 155 S.E. 644 (1930). Hence, we are again concerned with when the right to bring such action accrued or, in other words, when the statute commenced to run. The general rule on warranties is that where unsound personal property is sold with a warranty of soundness, or where goods are warranted to be of a certain kind or quality, but are not of that kind or quality, the warranty is broken as soon as made and *the statute begins to run from the date of the sale or delivery, not from the time when the buyer sustains consequential damage and this is so although the buyer is wholly unable to ascertain whether the goods comply with the warranty.* 54 C.J.S. Limitations of Actions § 138c (1948). The West Virginia Supreme Court adhered to this rule in the case of Merchants' Nat. Bank of West Virginia v. Spates, 41 W.Va. 27, 23 S.E. 681 (1895). While the court was there dealing with an implied warranty of validity of an assigned county draft, we think the principles of law asserted therein are applicable to the case at bar. In the Merchants' Nat. Bank case, supra, the bank, as assignee, brought suit against defendant, assignor, to recover a county draft which could not be collected. The bank alleged a breach of an implied warranty of validity of the draft. Defendant pleaded the statute of limitations. Judge Holt, writing the opinion for the court, stated,

" * * * There is a breach at once of the implied warranty that it is a valid subsisting claim. The right of action accrues immediately, and the fact of the vendee's inability then to ascertain the quality or condition of the property will not change the rule. * * * It is not deferred until damages ensue."

Here, plaintiffs allege a breach of implied warranty of fitness of the piping and faulty workmanship in the installation. We will consider only the former because one does not warrant his service or the tangible evidence of his skill to be "merchantable" or "fit for an intended use." These are terms uniquely applicable to goods and products. Faulty workmanship implies negligence—not a breach of warranty. Assuming, therefore, there was an implied warranty of fitness of the piping, it is quite clear that the breach occurred at the time of its installation and a right of action accrued at that time and not with the ensuing injuries and damages. Such is consistent with the West Virginia law. The defendants' acts and the breach were simultaneous, thus giving rise to an action at that time.

 The contention that the breach was not discoverable until the damages occurred and that a right of action did not accrue until then is unpersuasive and carries no legal significance. Cf. Merchants' Nat. Bank v. Spates, supra. As previously mentioned, the Morgan case, supra, merely extended the "discovery rule," as enunciated in the subterranean cases, to medical malpractice suits. To apply it here would necessarily call for the disapproval of the Merchants' Nat. Bank case, supra. Such is not justified by the cautious language used in the Morgan decision.

 Therefore, we can only hold that in an action *ex contractu*, where there is an implied warranty of fitness, the warranty is breached at the time of the delivery, or as here, at the time the alleged faulty gas pipes were installed, and that a right of action accrued then and not when such breach was discoverable, or by the exercise of reasonable diligence, could have been discovered, as is the rule in certain actions sounding in tort.

 So viewed, we must hold that the claim asserted for breach of implied warranty of fitness accrued more than five years before this suit was brought and is, therefore, barred as to the adult plaintiffs.

For the reasons above appearing, it is Adjudged and ordered:

(1) That the defendants' plea of the statute of limitations as to plaintiffs' *ex delicto* action be, and the same is, hereby overruled; and

(2) That the defendants' plea of the statute of limitations as to plaintiffs' *ex contractu* action be, and the same is, hereby sustained as to the adult plaintiffs, but overruled as to the infant plaintiff.