**Alma Lee BISHOP and Raymond Lewis Bishop, Plaintiffs,**

**v.**

**Dr. Kenneth BYRNE, Defendant.**

**Civ. A. No. 2131.**

United States District Court
S. D. West Virginia,
Huntington Division.
March 21, 1967.

John D. Epperly, Broaddus, Epperly &
Broaddus, Martinsville, Va., and William

A. Beckett, Beckett & Burford, Huntington, W. Va., for plaintiffs.

John E. Jenkins, Jenkins, Schaub & Fenstermaker, Huntington, W. Va., for defendant.

CHRISTIE, District Judge.

This diversity action is presently before the Court pursuant to defendant's motions (a) to dismiss and (b) for summary judgment. The basis for the action is as follows:

In July 1962 plaintiffs engaged defendant to perform a sterilization operation on Mrs. Bishop. Some seventeen months later Mrs. Bishop became pregnant and on September 29, 1964, she was delivered of a child by Caesarean section. At the time of this birth one of her Fallopian tubes was found to be intact. This is alleged to have resulted from the negligent manner in which defendant performed the 1962 sterilization operation.

The plaintiffs alleged a breach of warranty as well as the commission of a tort, and they claim damages for the expenses incurred in the birth of the child in 1964 and for the anguish and suffering endured by Mrs. Bishop during the course of the pregnancy. There is no contention that the child is abnormal or that the birth was an unusual Caesarean section.

The grounds for the motions and their disposition will be separately treated.

### I—BREACH OF WARRANTY

■ The law in West Virginia is well settled that a physician does not warrant or insure that his treatment will be successful in the absence of a special contract to that effect. Dye v. Corbin, 59 W.Va. 266, 53 S.E. 147 (1906); Schroeder v. Adkins, 149 W.Va. 400, 141 S.E.2d 352 (1965). The discovery depositions establish that Dr. Byrne made no express warranty or guarantee of the operation's success. That the parties may have assumed and expected there would be no subsequent pregnancies fails to alter the undisputed fact that no express promise to that effect

was given. Nor does such an assumption, under any legal theory known to the Court, create an express warranty. Consequently, considered in the light of the facts disclosed by the plaintiffs' discovery depositions, I find as a matter of law that plaintiffs have stated no cause of action on the theory of breach of warranty and that defendant's motion for summary judgment as to this aspect of plaintiffs' case must be granted.

### II—LIABILITY FOR NEGLIGENT STERILIZATION OPERATION

■ Although there is a proliferation of reported malpractice cases, the briefs of counsel as well as our own investigation disclose few instances wherein a court has had occasion to pass upon the question of a physician's liability for the after effects of a negligently performed sterilization operation. One of these, however, [West v. Underwood, 132 N.J.L. 325, 40 A.2d 610 (1945)] is close in point with the present situation and sets forth what we believe to be the correct rule of law in this area. It was held therein that the jury could find that the doctor had undertaken to perform a sterilization operation and had failed to do so (apparently from oversight) and thus the plaintiff would be entitled to recover for all pain and suffering, mental and physical, together with loss of services and any other loss or damages proximately resulting from the negligence.

■ It is black-letter law that if the effect of a person's negligent act is reasonably foreseeable, in the absence of an intervening cause, that individual is responsible for such injury. 13 Michie's Jur., Negligence, sec. 22 (1951). The operation in question was allegedly undertaken to safeguard Mrs. Bishop's health assuming that it can be established that it was negligently performed, it follows that if the condition which it sought to avoid subsequently occurred and as a result mental or physical suffering, or both, accompanied it, the victim has been injured. 70 C.J.S. Physicians and Surgeons § 67 (1951). The part played by

Mr. Bishop in bringing about this condition does not, in our opinion, amount to an intervening cause.

■ Admittedly, the discovery depositions of Mr. and Mrs. Bishop do not indicate that a great deal of mental or physical suffering resulted from the pregnancy and subsequent Caesarean section and a jury might well find none had occurred. Nevertheless, its existence and degree are disputed issues of fact and not subject to summary disposition by the Court.

## III—JURISDICTIONAL AMOUNT

Defendant takes the position that the amount in controversy is less than the required amount to sustain federal jurisdiction under 28 U.S.C. § 1332, inasmuch as there has been no showing of an abnormal pregnancy and the amount expended by plaintiffs for the child's birth was only $684.00. Thus, it is contended that, assuming any recovery can be had, it must be limited to the actual expenses incurred.

■ The subject of jurisdictional amount is treated in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845, in this manner:

> "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

Likewise, the fact that the Court may consider it highly unlikely that the plaintiff will recover the amount demanded is not enough to defeat jurisdiction, unless it appears to a legal certainty that that sum cannot be recovered. Nor can the controversy as to jurisdictional amount be decided on the assumption that a verdict, if rendered for the amount sued for, would be excessive and must be set aside for that reason, since such a determination could not be judicially made before the verdict was in fact rendered. Barry v. Edmunds, 116 U.S. 550, 6 S.Ct. 501, 29 L.Ed. 729.

■ Applying this rule to the averments of the complaint in the instant case, it must be observed that by statute [1] West Virginia has given to the wife the right to sue and be sued as if she were a single woman and the Supreme Court of Appeals of that state has held that a married woman may not join her husband as co-plaintiff in an action for personal injuries. Larzo v. Swift & Co., 129 W.Va. 436, 40 S.E.2d 811 (1946). Thus, the two claims may not be aggregated but must be considered separately in determining if there is requisite jurisdictional amount for each.

■ Taking up the wife's claim first: The complaint alleges that she "lived in fear of her life and health because of the negligent performance of the operation by the defendant." Yet it does not affirmatively allege any physical injury to, or pain and suffering by, her. But such, I believe, can fairly be inferred. For instance, the complaint alleges that subsequent to the sterilization operation she was delivered of a child by Caesarean section, and the Court will take judicial notice of that which is common knowledge, i. e., that a period of pregnancy followed by the birth of a child under such circumstances would cause the mother some physical injury, some physical pain and suffering, and some mental worry and anxiety. Damages for physical pain and suffering and mental worry and anxiety, being unliqui-

1. W.Va.Code, 48–3–19:
 "A married woman may sue or be sued alone in any court of law or chancery in this State that may have jurisdiction of the subject matter, the same in all cases as if she were a single woman, and her husband shall not be joined with her in any case unless, for reasons other than the marital relation, it is proper or necessary, because of his interest or liability, to make him a party. In no case need a married woman, because of being such, prosecute or defend by guardian or next friend."

dated and indeterminate in character, are generally for jury determination, and I cannot say with any degree of legal certainty at this stage of the case that good faith is totally lacking in the amount of damages asserted. Davis v. Pugh, 133 W.Va. 569, 57 S.E.2d 9 (1949). And this is true even though I have the right to set aside the verdict if in my opinion it is clearly excessive or if it is clearly shown that the jury was misled by a mistaken view of the case. French v. Sinkford, 132 W.Va. 66, 54 S.E.2d 38 (1948). To dismiss this controversy as to the wife for failure of her claim to meet the jurisdictional requirement as to amount would necessitate a determination, as a matter of law, on a subject that time and again has been declared to be in the first instance within the jury's province. I have been cited to no authority for this proposition and, in fact, the case of Ball v. Mudge, 64 Wash. 2d 247, 391 P.2d 201 (1964), relied upon by defendant, appears to support the position that the question of damages, and consequently their amount, if any, is a jury question in this type of action. Requisite jurisdictional amount is, therefore, found to exist at this time as to the wife's claim.

■ This brings us to the husband's claim. Needless to say, there is no averment that he suffered any physical injury by reason of the ineffectiveness of the operation on his wife; nor can any such inference be drawn from the facts alleged. However, though not specifically so alleged, one may infer from the complaint as a whole that he bore the expense incident to the child's birth, amounting to $684.00, as it was primarily his duty to do under West Virginia law, Larzo v. Swift & Co., supra, and that he, too, suffered some mental worry and anxiety, but I have no difficulty in finding that these in combination would not justify a verdict of $10,-000.00 under any circumstances. But there is lack of jurisdictional amount as to his claim for a more potent reason, for, under West Virginia law, one may not have a recovery for mental suffering alone, and unaccompanied by any physical injury. See Davis v. Western Union Telegraph Co., 46 W.Va. 48, 32 S.E. 1026, where the common law rule is quoted and applied thusly:

"A rule that is more consistent with recognized legal principles, and that is supported by better authority, is that mental suffering alone, and unaccompanied by other injury cannot sustain an action for damages, or be considered as an element of damages. Anxiety of mind and mental torture are too refined and too vague in their nature to be the subject of pecuniary compensation in damages, except where, as in case of personal injury, they are so inseparably connected with the physical pain that they cannot be distinguished from it, and are therefore considered part of it."

This rule was later reaffirmed and applied by the West Virginia Court in Monteleone v. Co-Operative Transit Co., 128 W.Va. 340, 36 S.E.2d 475 (1945) and Toler v. Cassinelli, 129 W.Va. 591, 41 S.E.2d 672 (1946). Thus excluding, as we must, this aspect of his grievance, there is left only his liquidated claim of $684.00.

■ But, may this $684.00 claim of the husband be litigated as an appendage to the wife's action on the principle of pendent jurisdiction stemming from the decision in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933) and the more recent decision in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)? Apparently so, see Borror v. Sharon Steel Co., 327 F.2d 165 (3rd Cir. 1963), where Chief Judge Biggs, at 172 et seq., recognized that that decision was an extension of Hurn v. Oursler, supra, in that the former case involved federal and non-federal causes of action whereas the *Borror* case, like the present one, is a diversity case in which federal jurisdiction turns upon citizenship and amount involved. However, I think that the observation of Judge Biggs in the *Borror* opinion, to the effect that the extension of Hurn v. Oursler is a desir-

able one and should be countenanced by law, is equally applicable to the present case. He said, "Such a concept seems clearly within the contemplation of Pennsylvania practice. Such a course saves the time of jurors, of witnesses, of the parties, and of the judges."

Further support for this view is found in the *Gibbs* case, supra, wherein Mr. Justice Brennan pointed out that the doctrine of pendent jurisdiction is not one of "right" but instead is one of "discretion." Thus, the plaintiff has no *right* to invoke the doctrine, but the Court may apply it in a proper case in the exercise of sound discretion. Its justification, according to Mr. Justice Brennan, lies in considerations of "judicial economy, convenience and fairness to litigants." Moreover, its application in the circumstances of this case is consistent with one of the underlying purposes of the Rules: To encourage joinder of claims, parties and remedies. The husband's right to recover his expenses in connection with the child's birth will, therefore, be litigated as subsidiary to the wife's claim for her damages.

## IV—STATUTE OF LIMITATIONS

The defendant asserts the two years statute of limitation [2] as a bar to the maintenance of the tort aspect of this action. Parenthetically, the breach of warranty aspect is governed by a five year limitation [3] and there is no question but that the action was instituted within that period.

 The negligent operation complained of was performed on July 20, 1962 and this action was commenced more than two years thereafter, to-wit, on June 22, 1965. The statute itself does not expressly provide that the period of limitation shall commence to run from the time the tort or wrong is committed; nor does it expressly provide that the period of limitation shall commence to run from the time the wronged plaintiff discovers, or, in the exercise of reasonable care, should have discovered, that a tort or wrong has been committed by the defendant with a consequent damage to the plaintiff. But in the area of medical malpractice suits, the West Virginia Court quite recently, in Morgan v. Grace Hospital, Inc., 144 S.E.2d 156 (W. Va.1965), departed from its previous holdings in Baker v. Hendrix, 126 W.Va. 37, 27 S.E.2d 275 (1943) and Gray v. Wright, 142 W.Vt. 490, 96 S.E.2d 671 (1957) that the period of limitation begins to run from the time of the commission of the wrongful act, and established the rule that the period of limitation does not commence to run against the plaintiff's cause of action until he learns of, or by the exercise of reasonable diligence should have learned of, the defendant's negligent act or omission. Cf. Howard v. United Fuel Gas Co., 248 F.Supp. 527 (S.D.W.Va.1965). Hence, in its application, the rule now in effect and by which we are now governed usually raises an issue of fact for jury determination. The pleadings raise such an issue here and the defendant's motion to invoke the two year limitation as a bar to this action is accordingly presently overruled.

2. W.Va.Code 55–2–12:
 "Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; * * *."

3. W.Va.Code 55–2–6:
 "Every action to recover money * * * shall be brought within the following number of years next after the right to bring the same shall have accrued * * * if it be upon any other contract, express or implied, within five years * * *."